THOMAS A. McLAURIE *et al.*

*v.*

JOHN H. THOMAS.

1. VENDOR'S LIEN—*when retained.* As a general rule, in equity, the vendor retains a lien upon the real estate sold by him, until the purchase-money is paid.

2. This is always the case between the parties themselves, unless the lien has been expressly or impliedly released.

3. SAME—*by what means the lien is lost, and when preserved as against second purchasers.* Where there is an express agreement to waive the lien, or where the vendor takes other security, he thereby waives it.

4. And the same effect is produced by an assignment of the notes given·for the purchase-money, as the assignee cannot enforce such a lien.

5. And a person purchasing from the vendee without notice, or a knowledge of such facts as charge him with notice, of the former vendor's lien, takes the property freed therefrom.

6. Usually, in case of the sale of several tracts of land, and the vendee sells a portion to another person, even with notice, and receives the purchase-money, the vendor will be required to exhaust the property remaining in the hands of his vendee, before he can resort to the portion in the hands of the second purchaser.

7. Or, where a person who only holds a bond for a conveyance from his vendor, sells a portion of the premises to another, and the first vendor conveys such portion to the second purchaser without objection, and without any notice to him that he would rely on his vendor's lien as to the portion so conveyed, and permits such second purchaser to pay the money to his vendor, without objection, the first vendor will thereby be estopped from afterward asserting his lien for unpaid purchase-money, as against such second purchaser.

8. It seems that where the vendee, who holds the land subject to his vendor's lien for unpaid purchase-money, sells all of the land to different purchasers, who are all in the same situation, having notice of the first vendor's rights, the land must all be charged ratably with his lien.

9. But where a purchaser from the first vendee of a portion of the premises holds in such manner that the first vendor's lien still exists as to him, and he purchased with knowledge that the residue of the premises had been sold to other parties discharged from that lien, the portion so purchased by him must bear the whole burden of the unpaid purchase-money due the first vendor.

10. If, however, at the time such second purchaser, holding subject to the first vendor's lien, acquired his title, there remained another portion of the premises also subject to that lien, these two portions being chargeable ratably with the entire lien, and the latter portion was afterward sold to another party to whom the first vendor released his lien, with notice of the sale to the former of these two purchasers, then the second purchaser, who still holds subject to the lien, will hold his portion discharged from the ratable proportion thereof which had existed upon the other portion at the time he purchased, and which had been released on the subsequent sale of the same.

11. NOTICE TO PURCHASERS — *what constitutes.* Where a purchaser of land from one who only holds a title bond therefor, takes a conveyance from the first vendor, he will be chargeable with notice of the lien of the latter for purchase-money, for if he did not have actual knowledge that the purchase-money was unpaid, he should have inquired of the one from whom he received his deed, in relation to that fact.

12. Or, if such second purchaser takes either the bond of his vendor for a conveyance or an assignment of the bond held by his vendor, he will be equally chargeable with notice of the first vendor's lien for unpaid purchase-money, and for the same reasons.

13. PARTIES IN CHANCERY — *in suit to enforce vendor's lien.* A party who held a bond for a conveyance of land, a part of the purchase-money remaining unpaid, sold a portion of the premises to another, and either assigned to his vendee the bond which he held, or executed to him his own bond for a deed, and the residue of the premises were sold by the same vendee to other parties: *Held,* that in a suit by the first vendor to enforce his lien for purchase-money against the portion sold to the second purchaser first above mentioned, the first vendee was not a necessary party, although perhaps he would, not have been an improper party.

14. But if any other of the second purchasers held their portions subject to the first vendor's lien, they would have been necessary parties to such a bill; if, however, such other second purchasers held, discharged from the lien, it would not be necessary to make them parties.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. DAVID DAVIS, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. COLER & SMITH, for the plaintiffs in error.

Mr. E. S. TERRY, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery commenced by John H. Thomas against Reuben C. Barnes and Thomas McLaurie, in the Champaign Circuit Court, for the purpose of removing a claim of title by Barnes and McLaurie. It appears from the evidence that complainant, on the 4th day of July, 1855, sold to Barnes, and executed to him a bond for the conveyance of the north half of the north half of the S. W. 12, T. 19, N. R., 8 E. The price agreed to be paid was $2,000; $200 in hand, $100 payable in two months, $200 on the 1st of April, 1856, $750 in one year, and $750 in two years. That Barnes executed his notes for the deferred payments. That afterward, on the 30th day of May, 1856, complainant, at the request of Barnes, conveyed five acres of the land to one J. W. Scroggs. That on the 11th day of August, 1856, he, at the request of Barnes, conveyed to Ezra B. Lincoln twenty-one acres of the same tract of land; and on the 7th day of May, 1858, he in the same manner conveyed to Thomas R. Leal, James H. Leal and Thomas A. McLaurie, five acres of the remaining portion of the forty-acre tract. That Barnes has paid all of the purchase-money except the portion for which the last two notes were given.

At the April Term, 1858, Thomas recovered a judgment on these notes, against Barnes, in the Champaign Circuit Court, for $1,681.05. That on the 13th day of July following he sued

out execution against Barnes on the judgment, which was levied on the remaining nine acres of the forty-acre tract. It was afterward sold by the sheriff, and purchased by complainant in satisfaction of his judgment, and, not being redeemed, the sheriff executed to him a deed for the land thus sold. That on the 4th day of July, 1856, McLaurie purchased of Barnes the remaining nine of the forty acres for the sum of $2,500, to be paid in three annual installments. That McLaurie took immediate possession of the nine acres, and has continued to hold the same.

Barnes was not served with process, and complainant dismissed the bill as to him. On the hearing, the court below rendered a decree that McLaurie pay the amount of the judgment, with interest and costs, to complainant by a specified time, and, upon the payment of that sum, that complainant should convey to him this nine acres, and, in default of such payment, that McLaurie be forever enjoined from asserting title to this land.

It is contended by plaintiff in error, that all of the property is equally liable to contribute *pro rata* to the payment of this balance on the purchase-money, while defendant in error contends that it is liable only in the inverse order in which it was sold. As a general rule, in equity, the vendor retains a lien upon real estate sold by him, until the purchase-money is paid. This is always the case between the parties themselves, unless the lien has been expressly or impliedly released. Where there is an express agreement to waive the lien, or where the vendor takes other security, he thereby waives it. *Conover* v. *Warren*, 1 Gilm. 498; *Trustees of Schools* v. *Wright*, 11 Ill. 606. And the same effect is produced by an indorsement of the notes given for the purchase-money, as the assignee cannot enforce such a lien. *Richards* v. *Leaming*, 27 Ill. 431. And usually, in case of the sale of several tracts of land where the purchaser sells a portion to another person with notice, and receives the purchase-money, the vendor will be required to exhaust the property remaining in the hands of his vendee before he can resort to the portion in the hands of the second

purchaser. And a person purchasing from the vendee without notice, or a knowledge of such facts as charge him with notice, takes the property freed from the vendor's lien.

In the case of *Blight* v. *Banks*, 6 Mon. 192, the court held, that where a vendee sold all of the land to different purchasers and at different times, and they are in the same situation, the lands must be charged ratably with the vendor's lien. The decision in that case was, however, based upon the fact, that all of the second purchasers had notice of the existence of the lien, and having ample means to protect themselves from loss by retaining the purchase-money, or abstaining from buying the land until it was paid for by the vendee, they must be presumed to have taken it subject to the incumbrance. Parties having purchased with notice of the incumbrance, and not having paid their vendor, take the property subject to this as they would any other lien. Had they been innocent purchasers for value and without notice, and had they paid their purchase-money to their vendor it would no doubt have been otherwise.

In this case all of the purchasers seem to be chargeable with notice, as they received their deed of conveyance from complainant on their purchase from Barnes, except plaintiff in error, who either took an assignment of the bond held by Barnes, or his bond for a conveyance, either of which would be notice. If they did not have the actual knowledge that the purchase-money was not paid, they could have readily acquired it, and it was their duty to have learned it from complainant when they severally received their deeds from him. The notice was sufficient to have put them on inquiry that must have led to a knowledge that the purchase-money had not been paid by Barnes. And had they still owed their vendor for the land, they would, no doubt, have remained liable to the first vendor, for their ratable portion of the purchase-money.

Another question is, however, presented, and that is whether complainant by executing deeds to Barnes' vendees, did not release his lien. So far as we can see, complainant made these conveyances without objection, and without any notice to the

purchasers that he would rely on his vendor's lien, and not only so, but permitted them without objection to pay the money to Barnes. If complainant stood by and saw these purchasers pay their money for the land, and made conveyances to enable Barnes to receive the money, and made no claim or gave no notice of his lien, he must be estopped to claim it now. To do so would be highly inequitable and unjust. Complainant having remained silent when equity and good conscience required him to speak, he will not be permitted now to speak, when it would be unjust to be heard. By the conveyance to Barnes' vendees, he waived all right as against them to claim and enforce any lien.

This, then, disposes of the qestion as to a vendor's lien, on ɪll of the land but nine acres purchased by plaintiff in error of Barnes. But the question still remains whether that nine acres remains charged with the entire lien for the unpaid balance of the purchase-money. He has no just right to say that he was misled by any act of complainant. And he purchased entirely on a credit, and, for aught that appears, the agreement may have been, that the money he was to pay should be, so far as necessary, applied to the payment of complainant to release the land. He could, if he was not already informed, have easily learned that the purchasers of the other portions of the tract had paid for their several portions, and had received deeds of conveyance from complainant and had been released. Knowing these facts, or failing to learn them, he must be charged with notice that complainant has waived his lien on the portions already conveyed, or was at least estopped from its assertion.

It is, however, urged that the sale to Lincoln was subsequent, in point of time, to Barnes' sale to plaintiff in error. The evidence shows that Lincoln received his deed from complainant in the year 1856, but the date does not appear. Plaintiff in error states in his answer, that he purchased of Barnes, on the fourth day of July, 1856; but whether Lincoln received his deed before or after that time does not appear. If afterward, the twenty-one acres purchased by him was, up to the time he received his deed, equally bound by the lien with the nine acres

in controversy. If complainant, after the purchase by plaintiff in error, with notice of that purchase, conveyed to Lincoln, and thus released his lien on that portion of the land, he thereby waived his lien to that extent, and cannot now impose the *pro rata* burden which it should bear, upon the nine acres in controversy. If plaintiff in error purchased the nine acres when it and the tract purchased by Lincoln were each liable for their *pro rata* share of the lien, plaintiff in error acquired the right to discharge his portion from the lien by paying a ratable proportion of the purchase-money. If he did acquire that right complainant could not deprive him of the right. He could release Lincoln's tract of its ratable portion of the lien, but could not shift it to the nine acres in controversy. The same would be true of any other part of the land conveyed subsequently to the purchase by plaintiff in error of the land in controversy.

Complainant filed his bill for a specific performance of the agreement, or to quiet his title under the sheriff's sale. He asks that the balance of the purchase-money unpaid be declared a lien on this nine acres, and that plaintiff in error be decreed to pay it, and in default of his doing so, that he be enjoined from asserting title. Before he can obtain such a decree it devolves upon him to show that this land is alone liable for the purchase-money. And while it may be that he has shown that this land is liable for a portion of the purchase-money, we think he has failed to show that it is liable for the full amount. We are therefore of the opinion that the court erred in rendering the decree it did, upon the evidence in the record.

While Barnes would not have perhaps been an improper party, we do not see that he was a necessary party. We do not see from the record as it comes before us, that any proper decree which the court could render, would in any manner affect his rights. It follows that there was no error in dismissing the bill as to him. If, however, any of the purchasers had taken their portions of the land subject to the lien, they would of course be necessary parties, but as complainant seems to

have waived his lien to their portions, we do not see that it was necessary to make them parties.

The decree of the court below is reversed, and the cause remanded for further proceedings.

*Decree reversed.* ✓