## NANCY E. KIRKHAM *et al.*

### *v.*

### JACOB E. BOSTON.

1. VENDOR'S LIEN. A vendor's lien is not recognized by our statute, and is entirely unknown at common law. It was ingrafted into the equity jurisprudence of England from the civil law. It is based upon the implied agreement existing between the vendor and vendee that the former

shall hold a lien on the lands sold, for the payment of the purchase money. When, therefore, it appears that the vendor did not rely on the lien, this does away with the implied agreement, and courts hold the lien waived.

2. SAME—*taking security, a waiver of.* If the vendor, on a sale of land, takes other security for the payment of the purchase money, this will be construed as a waiver of the lien.

3. Thus, where a party sold and conveyed land, and received in payment, from the purchaser, the notes of a third party, secured by mortgage on real estate, it was *held*, that he had no lien upon the land sold by him to enforce payment of so much of the notes received by him as he could not collect of the maker.

4. EVIDENCE—*parol proof to vary a written contract.* Parol evidence can not be received to change the terms of a contract that is in writing. But where, pending a negotiation, a writing is executed relating to some few particulars of the contract as afterwards consummated by a parol agreement, which clearly appeared not to be the contract of the parties, it was *held*, that parol evidence was admissible to show what the contract was.

5. SAME—*parol evidence as to indorsement of note.* While it is true that testimony is not admissible to prove a parol agreement made at the time of the indorsement of a promissory note, for the purpose of varying the legal effect of such indorsement, yet the indorser, when sought to be charged, has the right to show, by parol testimony, what the consideration of the indorsement was, and that it has failed, or that there was fraud.

6. INDORSEMENT—*liability on.* Where a party gave notes on a third person in payment for land, and they being afterwards lost, the owner of them procured the execution of others in their place, and agreed with the original payee that, if he would indorse the same, he would take them at his own risk, and would contribute his proportion towards satisfying a mortgage on premises in which both were interested, which he failed to do, it was *held*, that the consideration for the indorsement had failed, and that the assignee could not hold the indorser liable upon the assignment procured under such circumstances.

7. CONTRACT—*construed.* Where the original bargain for the purchase of land was, that the vendor was to take certain notes held by the purchaser in payment at his own risk, and pending the negotiation, and before the consummation of the contract, the purchaser executed a written undertaking, in which he agreed to assign the notes and mortgage securing them to the vendor: *Held*, that, in view of the circumstances, the agreement to assign could not be so construed as that the purchaser should become liable as indorser.

APPEAL from the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

Mr. B. B. SMITH, and Mr. W. R. HUBBARD, for the appellants.

Mr. W. H. GRAY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a decree rendered by the circuit court of Marion county, in which Jacob E. Boston was complainant, and Nancy E. Kirkham and John Kirkham were defendants, in a bill in chancery to subject lands conveyed to a married woman to the unpaid balance of the purchase money. The defendants answered the bill and also filed a cross-bill.

The circuit court decreed that defendants should pay complainant $1452 in thirty days, and costs, and in default thereof the master in chancery should sell the lands conveyed by complainant to Nancy E. Kirkham. Defendants appeal.

In order to get a full understanding of this case, it is necessary to state the leading facts as shown by the record.

Nancy E. Kirkham, one of the defendants, originally owned the E. hf. W. hf. of S. E. qr. and W. hf. of E. hf. of S. E. qr. sec. 13, township 1 N., R. 4 W., and the S. hf. of N. E. qr. sec. 31, township 1 N., R. 3 W., in Clinton county, Ill. While she owned this land she gave a deed of trust on sixty acres of it to one J. E. Staehr for $1000. She afterwards sold and conveyed the whole of the land to Henry Albers, and took of him, to secure the payment of purchase money, his three promissory notes of $1166.66⅔, each, due in one, two and three years, with interest, and a mortgage on all of the land.

In the month of August, 1868, and before any of these notes were due, she bought of the complainant a farm in Marion county, for which she gave in payment the two notes first due and one year's interest on the third note which she held

against Henry Albers, making the amount $2682. At the time of the trade these three notes were lost, which fact was known to complainant; he also knew that J. E. Staehr held a deed of trust on sixty acres of these mortgaged lands for $1000.

The mortgage securing these three notes was transferred to complainant, and, by agreement, deposited in the hands of Thos. Smith, to hold for the benefit of both contracting parties. The day before the mortgage was assigned, the husband of Nancy E. Kirkham signed her name to a paper that reads as follows:

"CARLYLE, ILL., August 6, 1868.

"Nancy E. Kirkham agrees to assign to Jacob E. Boston two certain notes and mortgage she holds against Henry Albers, and the interest, with the whole mortgage due up to January 21st, 1869, to secure the said Boston the sum of $2682 she now owes him for the purchase of certain lands in Marion county, Ill.

"NANCY E. KIRKHAM, by JOHN KIRKHAM.

"JACOB E. BOSTON."

The day after this paper was executed, complainant conveyed to her the Marion county lands, and she assigned to him the mortgage. This ended the trade, and she moved on the Marion county lands.

Six or eight months after this, as is shown by the evidence of three witnesses, and it is only contradicted by the complainant, complainant obtained of Henry Albers three notes, in lieu of and to correspond with the three lost ones, and went to the house of defendants and asked them to assign them by indorsement, which they declined to do, on the ground they would be liable as indorsers. He then told them that Thos. Smith, who held the mortgage, told him to tell them to assign the notes. He further agreed that, if they would assign the notes, he would join with them and buy up the Staehr

deed of trust, each to pay in proportion to the interest held in the Albers notes and mortgage; that Nancy Kirkham relied on these statements and representations of complainant, and assigned the notes.

After complainant obtained the assignment of these notes, he refused to contribute to buy up or pay off the Staehr deed of trust, and the sixty acres of land was sold by the holder thereof; he foreclosed the mortgage on the remaining forty acres, and sold it; sued the notes given by Henry Albers, obtained judgment, as they became due, and levied on and sold thirty-five acres of land belonging to Henry Albers. He realized from foreclosure of mortgage and sale of thirty-five acres, in all $1400. The land that was mortgaged to secure the three notes against Henry Albers, was worth from $4500 to $5000.

Without entering upon an investigation of the various errors assigned, the decision of this case, as we view it, depends upon two questions: *First*, is the complainant entitled to a vendor's lien for the balance of the purchase money? *Second*, is he entitled to any judgment against defendants?

These questions we will consider in their order. The vendor's lien is not recognized by our statute, and is entirely unknown at common law. Story says the origin of the doctrine may be ascribed to the Roman law, from which it was imported into the equity jurisprudence of England; at any rate, the lien was created by courts of equity.

The main principle that governs courts of equity in enforcing the vendor's lien is the implied agreement existing between the vendor and vendee, that the former shall hold a lien on the lands sold for the payment of the purchase money. When, therefore, it appears that the vendor did not rely on the lien, this does away with that implied agreement, and courts hold the lien waived.

If the vendor, on a sale of lands, takes other security for the payment of the purchase money, this will be construed a waiver of the lien. 4th Kent, 153; *Conover* v. *Warren*, 1

Gilman, 500; *Richards* v. *Leaming,* 27 Ill. 431; *McLaurie* v. *Thomas,* 39 Ill. 291.

In this case it is apparent, from the evidence, the vendor did not rely on the lien. He sold the farm in Marion county for two notes and one year's interest on a third note given by Henry Albers to Nancy E. Kirkham, which were secured by mortgage on real estate. At the time the trade was made he evidently relied on these notes for his pay, and on nothing else. By taking these notes, secured as they were, he lost the vendor's lien.

The next question that arises is, is complainant entitled to a judgment against the defendants?

It is insisted that the contract between complainant and defendant, in which the notes against Albers were traded for the land in Marion county, is in writing, and that the writing bearing date August 6th, 1868, is the contract, and that parol evidence can not be introduced to vary its terms.

It is true, parol evidence can not be introduced to change the terms of a contract that is in writing, but in this case the writing bearing date August 6th, 1868, is not the contract between these parties; it does not contain or purport to contain the terms of the contract as sworn to by complainant or defendants; no lands are described in it; no time is fixed when Boston is to make a deed for the land he sold; it does not state what kind of a deed he is to make, or that he is ever to make a deed. In fact, it is apparent, from an inspection of the paper, that it does not and never was intended to contain the terms of the trade between these parties. After they had made their contract by parol, and agreed on the terms and conditions thereof, this writing seems to have been executed as an agreement on the part of Nancy E. Kirkham to assign the notes and mortgage she held on Henry Albers to complainant, and the parol evidence which was introduced which showed the contract made by parol, and resting in parol, was proper. The contract was one thing, and this writing another.

Now let us look at the evidence, and see what the contract was between these parties. The defendants both swear that complainant was to take two of the notes on Henry Albers and one year's interest on the third note for the Marion county land, and that they were not to be responsible in any way or manner on the notes; in other words, complainant was to take them at his own risk.

John Kirkham swears that complainant admitted, six or eight months after the trade, that he was to take the notes on his own responsibility.

James Craig testifies that complainant told him that he had swapped his farm for notes and mortgage in Clinton county.

Corkhill swears complainant told him he had traded his land, and was to have his pay in a mortgage on land in Clinton county. There is nothing in the record to contradict all this evidence but the testimony of complainant.

The preponderance of the testimony, therefore, shows that complainant traded the Marion county lands for these notes and mortgage on Albers, and that he was to take them at his own risk. In fact, everything in the case points to the same theory. We can scarcely suppose that a business man of ordinary abilities would sell and convey a farm to a married woman, without property save the land she was getting, and not even take her own note, if he expected to hold her responsible for payment.

If, then, the contract was that complainant was to take these notes, secured by mortgage, at his own risk, what effect did defendants' indorsement of the notes have?

The evidence shows that, six or eight months after this trade was made, and after defendant had her deed, and had transferred the mortgage, complainant obtained of Albers three notes, in lieu of and like, in all respects, the three that were lost, and went to the defendant to get her to indorse them to him. This she refused to do. He finally agreed, if she would assign them over to him, he would not hold her responsible, but would contribute his full share of the money necessary

to buy up the deed of trust of $1000, which was a prior lien on sixty acres of these mortgaged lands. Upon this promise she indorsed the notes.

This court held, in the case of *Mason* v. *Burton,* 54 Ill. 354, that it was not competent to show, by parol evidence, an agreement made at the same time of the indorsement of a note, for the purpose of changing the terms of the indorsement. While this is true, still the defendant had the right to show by parol what the consideration for the indorsement of the notes was, and that the consideration has failed, or that there was fraud.

After complainant obtained the indorsement of these notes, he refused to contribute towards buying up or paying off the deed of trust, and hence the consideration for the indorsement failed.

It is claimed by complainant that, under the written contract, the defendant was bound to assign the notes. While this may be true, yet, as we have before said, in the original contract between these parties, complainant was to take these notes at his own risk, and we do not consider that a fair and equitable construction of the agreement to assign the notes and mortgage would hold defendant responsible as indorser thereon.

Under the whole proof in this case, we do not think complainant entitled to a judgment against the defendants or either of them. Nor do we think defendant entitled to relief under her cross-bill. It may be true that the complainant has not managed the collection of the notes against Albers as a prudent business man should; still, so far as defendant's own note was concerned, she had the right, at any time, to take it into her own hands and manage it as she chose. If she has deliberately stood by and suffered a loss, she is not blameless herself.

The decree of the circuit court will be reversed and the cause remanded.                                    *Decree reversed.*

Mr. JUSTICE SCOTT dissents.