LOOMIS and others *v.* DAVENPORT & ST. P. R. Co. and others.

PRICE *v.* SAME.

*(Circuit Court, D. Iowa. January, 1882.)*

1. VENDOR'S LIEN—EQUITABLE OWNER.

Although the general rule is that a vendor's lien on real estate for the purchase money is given to the person who owns the title and conveys, it is not indispensable that the legal title should have been vested in the party who claims the lien, nor that the deed or conveyance should have been actually executed by him. If he is the owner of the land in equity, and controls the legal title, and causes the conveyance to be made by the holder of the legal title to a third party, and is entitled to the purchase money, he is entitled to a vendor's lien therefor.

2. SAME—COLLATERAL SECURITY—WAIVER.

A vendor's lien is defeated by any act upon the part of the vendor manifesting an intention not to rely upon the land for security; as, for example, taking a distinct, separate security, as a mortgage or a bond, or note, with security; but the mere acceptance of the vendee's draft, not as security, but as payment of the purchase money, when such draft is not paid by the drawee, will not be considered a waiver of the lien.

3. SAME—MORTGAGE ON AFTER-ACQUIRED PROPERTY OF VENDEE.

Where land is conveyed to a railroad company, which has given a mortgage covering after-acquired property, such mortgage does not become a first lien on the land, but is subject to the vendor's lien for unpaid purchase money, and, as to such land, the mortgagee is not a purchaser for value.

4. SAME—LIS PENDENS—BONA FIDE PURCHASER.

Where one of the defendants, in a proceeding to foreclose a railroad mortgage in a circuit court of the United States, by leave of the court, proceeded in the state court to establish a vendor's lien on the road, a purchaser of the property at the foreclosure sale is chargeable with notice of the proceedings in the state and United States courts, and he is put upon inquiry as to the alleged vendor's lien.

In Equity.

McCRARY, J. The original action was brought to foreclose a mortgage upon the property and franchises of the Davenport & St. Paul

Railroad Company, and, among others, the present complainant, Hiram Price, was made a defendant; the bill alleging that he had or claimed some interest in the premises mortgaged. There was a decree of foreclosure on the twenty-third day of October, 1875, and a sale of the mortgaged property was ordered, subject, however, to the following reservation contained in said decree, to-wit:

"And said sale is to be made subject to any prior liens which may hereafter be established against said property in this court hereafter by any of the parties defendant claiming such lien."

At the time this decree was rendered the said Price had not appeared and answered. At the November rules, 1879, the cause still being undisposed of, default was taken at rules against said Price, but the same was subsequently, upon a showing, set aside by the court, and he was permitted to file the cross-bill now under consideration. Prior to the order setting aside said default, the said Price had, with the leave of this court, commenced suit in the circuit court of Scott county, Iowa, to enforce his vendor's lien against the *Davenport & Northwestern Railway Company* v. *Davenport & St. Paul Railway Company and John E. Henry*, who had been by the court appointed receiver of the mortgaged property. In that suit there was service of process and an answer by the Davenport & Northwestern Railway Company, and by Henry as receiver. Upon permission being granted to said Price to appear and file his cross-bill in this case, he dismissed the proceeding in the state court without prejudice. The facts upon which the vendor's lien is claimed, as we find them from the evidence, are as follows:

(1) That in the summer of 1873 the said Davenport & St. Paul Railroad Company, being desirous of securing the right of way over the land in controversy, applied to said Price to procure it for them. The company desired that Mr. Price should obtain the right of way, because they believed he could contract for it at lower prices than would be demanded of the company, and for a less sum than would be assessed as damages if the right of way should be condemned.

(2) The said Price acceded to said request, and undertook to secure the right of way for the said railroad company as a matter of accommodation, and not with a view to any pecuniary reward of profit. He was to be paid for the land what it cost him.

(3) At that time the land through which the right of way was to be obtained belonged part to Andrew J. Preston, part to Price, Hornby & Kehoe, and part to a street railway company.

(4) For the purpose of carrying out the agreement, the said Price bought the necessary land from all these parties, and paid for it out of his individual funds the sum of $2,500. As a convenient mode of conveying title to the railroad company, he secured a conveyance from Preston and the street railway company to Price, Hornby & Kehoe, and from the latter to the railroad company.

(5) There was no agreement that Price should receive anything but cash, or its equivalent, in payment for his expenditures, nor that he should accept any collateral or other security.

(6) Afterwards Mr. French, president of said railroad company, gave Price as payment for said right of way a draft, as follows:

"$2,500.                                    DAVENPORT, IOWA, July 15, 1873.

"On January 1, 1874, pay to the order of George H. French, president, twenty-five hundred dollars, value received, and charge the same to account of                                  DAVENPORT & ST. PAUL R. CO.

"By GEORGE H. FRENCH, Pt.

"*To Davenport Railway Construction Co., 57 Broadway, New York.*

"Indorsed: 'Accepted;' payable at Gilman, Son & Co., New York.

"DVPT. RWY. CONSTRUC. CO.

"By B. T. SMITH, Pt.

It was customary at that time for the company to pay debts by drafts upon said construction company, and the parties understood that the draft was given and received as equivalent to cash, and as payment and not as security.

(7) Said draft not being paid at maturity, was several times renewed, and finally put in judgment against the construction company, but the judgment was never collected, and the construction company has become insolvent.

(8) In July, 1877, the said Price commenced suit in the circuit court of Scott county, Iowa, to foreclose his vendor's lien. Due service was made in the same month upon the defendants therein, the Davenport & Northwestern Railroad Company, the Davenport & St. Paul Railroad Company, and John E. Henry, receiver; and on the twenty-sixth day of November, 1877, the answer of the first-named company (the real party in interest) and of the receiver was filed. That suit remained pending until the order of this court was made allowing said Price to file his cross-bill herein.

(9) The suit was brought in the state court against the receiver by permission of this court, and the counsel for the railroad company in that case obtained the default in this court in order to set the same up as a bar to action there.

(10) Upon applying for leave to file his answer and cross-bill in this case, said Price offered to dismiss his case in the state court upon the granting of such leave, and accordingly did so.

Upon these facts, the counsel for the Chicago, Milwaukee & St. Paul Railway Company, the present owner of the railroad, submits an able and exhaustive argument, in which he insists that the said Price has not shown himself entitled to a vendor's lien. I will consider the propositions relied upon by the counsel in the order in which they are presented in the brief.

1. It is said that complainant was never the owner of said premises, and never sold or conveyed them to the railroad company. We think, however, that in equity he was the owner. He had certainly purchased the land and paid for it, and had a perfect right to a deed in his own name. If he chose to consummate his contract with the railroad company, with its assent, by causing the conveyance to be made direct to the company by the parties from whom he had purchased, it certainly cannot follow, as a matter of equity, that he thereby lost his right to a vendor's lien for the purchase money. No doubt the general rule is that the lien is given to the vendor,—the person who owns the title and conveys it; but a court of equity must look to the substance, and not to the mere form, of the transaction.

We do not think that it is in all cases indispensable that the legal title shall have been vested in the party who claims the lien, nor that the deed or conveyance should have been actually executed by him. If he is the owner of the land in equity, and controls the legal title, and if he causes the conveyance to be made, and is entitled to the purchase money, he is entitled to the vendor's lien therefor. *Carey* v. *Boyle*, Sup. Ct. Wis. 1881, 21 Amer. Law Reg. 208; [S. C. 11 N. W. Rep. 47.]

2. It is insisted that complainant is not entitled to a vendor's lien, because he accepted the draft of the Davenport & St. Paul Railroad Company, drawn upon and accepted by the construction company for the amount of the consideration, and thereby waived his right to such lien.

It is true that a vendor's lien is defeated by any act upon the part of the vendor manifesting an intention not to rely upon the land for security; as, for example, accepting a distinct and separate security, such as a mortgage or a bond, or note, with security. 2 Washb. Real Prop. b. 1, p. 507; 1 Jones, Mortg. § 207 *et seq.; Boynton* v. *Champlin*, 42 Ill. 57; *Gilman* v. *Brown*, 1 Mason, 190; *Vail* v. *Foster*, 4 N. Y. 312; *Fish* v. *Howland*, 1 Paige, Ch. 20; *Kirkham* v. *Boston*, 67 Ill. 599. The question in every case is whether the vendor intended to waive his right to a lien upon the land, and to rely upon other collateral or independent security. In this case, as already stated, we find that such was not the intention of the complainant. The draft was taken as payment. The complainant had not agreed to accept anything besides cash or its equivalent. The construction company held the funds out of which the railroad company undertook to make payment. The draft was given as a mode of payment, and not for the purpose of securing the payment of the debt. The complainant did not agree to, nor intend to, loan the purchase money to the railroad company.

3. It is insisted that a vendor's lien in this case cannot be sustained, because the conveyance of the lands to the Davenport & St. Paul Railroad Company brought the same under the mortgage foreclosed in this case, which thereupon became a valid and legal lien thereon prior and paramount to any claim for such vendor's lien.

It is true that the mortgage covered after-acquired property, and it certainly attached to the land in question as soon as it was conveyed to the company; but whether such mortgage, as to this after-acquired property, became a lien prior and paramount to that of the complainant, for the purchase money, is a question now to be considered. The vendor's lien exists to the extent of the purchase money, not only against the vendee and his heirs, but also against his privies in estate, and against subsequent purchasers who have notice of it, either actual or constructive. It also exists against those who take a conveyance of the estate without advancing any new consideration, because such persons are not, within the meaning of equity, purchas-

ers for value. 1 Jones, Mortg. § 199, and cases cited. A mortgagee who takes a mortgage as security for a debt contracted at the time, is, for the purposes of this doctrine, to be regarded as a purchaser for value, and the vendor's lien is not good as against him unless he have notice. Id. § 200, and cases cited. "If the mortgage be given merely to secure a pre-existing debt, it will not prevail against the lien. The mortgagee is not then a purchaser in good faith for value."

In the present case the property in controversy is not described in the mortgage; it is included with the mortgaged property only by virtue of the clause in the mortgage covering property subsequently acquired by the mortgagor. As to such after-acquired property, is the mortgagor to be regarded as a *bona fide* purchaser for value, or as taking the property *cum onere?* The decisions of the supreme court of the United States seem to settle this question. *U. S.* v. *New Orleans R. R.* 12 Wall. 362; *Fosdick* v. *Schall,* 99 U. S. 235; *Myer* v. *Car Co.* 102 U. S. 1.

In all these cases the rule is laid down, without qualification, that "a mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands." "If," says Mr. Justice BRADLEY, in the case first cited, "that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be prior in point of time. It only attaches to such interest as the mortgagor acquires." And in *Fosdick* v. *Schall* the court say:

"The mortgage attaches to the cars, if it attaches at all, because they are 'after-acquired' property of the company; but, as to that class of property, it is well settled that the lien attaches subject to the conditions with which it is incumbered when it comes into the hands of the mortgagor. The mortgagees take just such an interest in the property as the mortgagor acquired; no more, no less."

And in *Myer* v. *Car Co.* the court say, construing the same mortgage now before us:

"In *Fosdick* v. *Schall* we held that a mortgagor, whose mortgage embraced property to be acquired in the future, was in no sense a purchaser of such property. His rights were not granted after the property was bought by the mortgagor. He got nothing by this provision in his mortgage except what the mortgagor himself had acquired. He paid nothing for his new security. He took, as mortgagee, just such title as the mortgagor had; no more, no less."

It is insisted by counsel for the railway company that these cases lay down a rule applicable only to after-acquired *personal* property; but the language of the court admits of no such limitation; nor does the principle upon which the court proceeds. That principle is that, as to after-acquired property, the mortgagee is not a purchaser for value; and it applies with the same force whether such after-acquired

property be personal or real. The character of the property can make no difference. 1 Jones, Mortg, §§ 157, 158, and cases cited.

The cases cited by counsel may, we think, all be harmonized with these decisions of the supreme court. They are, for the most part, cases where the question was between the holder of a vendor's lien, on the one hand, and a purchaser or mortgagee who had paid a present consideration in good faith and without notice, on the other. The case of *Pierce* v. *Railraod Co.* 24 Wis. 551, is the only one cited in which the property in controversy was acquired by the mortgagor after the execution of the mortgage, and in that case the contest was between the vendor and the purchaser at the sale under the decree of foreclosure, who was not charged with notice.

Doubtless such a purchaser, who pays the amount of his bid without notice of the vendor's lien, would be regarded as a purchaser for value and entitled to priority; and so it was held in the case just cited, the court saying:

"It appears that Hunt and Sage purchased the property at the foreclosure sale and have conveyed it, *without notice of any equities of the plaintiff in the premises*, to the defendant company; * * * and that it would be a violation of all principle to permit the plaintiff, after the foreclosure sale and at this late day, to enforce a vendor's lien for the consideration named in the deed given in June, 1856, really seems to us too plain for argument."

There is in the present case a question of notice to the purchaser at the foreclosure sale which will be considered presently. This quotation is here made to show that the decision in the Wisconsin case was placed mainly upon the ground that the purchaser at the foreclosure sale was an innocent *bona fide* purchaser for value, and is, so far, quite consistent with the rulings of the supreme court of the United States above cited. If it contains anything inconsistent with those rulings, we cannot, of course, follow it.

4. It is next insisted that the Chicago, Milwaukee & St. Paul Railway Company is a *bona fide* purchaser of said premises for value, and without notice of the claim of complainant for a vendor's lien thereon. The title of the said company to the premises was derived under the foreclosure proceedings and the foreclosure sale of July, 1879. At that date the present complainant had not answered in this court, but had appeared here and obtained leave to prosecute his claim for a vendor's lien in the state court, and his suit in the state court was then pending against the parties representing the control and ownership of all the mortgaged property.

The record shows that on the sixteenth of August, 1877, Mr. Price presented his petition to this court, asking leave to sue the railroad company and the receiver in the district court of Scott county, to enforce his vendor's lien, and that on the same day that leave was granted. The record of the state court shows that on the twenty-seventh of the same month suit was brought in that court, and that it was prosecuted with reasonable diligence. The effort, at a later

date, to obtain a decree by default in this court, while the parties were in good faith, and with our assent, litigating the question of the vendor's lien in the state court, never met with the approval of this court, and the default obtained at rules was promptly set aside when the facts were brought to our notice.

The court, however, thought that Mr. Price should select one or the other forum, and therefore allowed him to appear and file his answer and cross-bill only upon condition that he should dismiss the suit in the state court without prejudice, which he did. It will be seen, therefore, that at the time of the master's sale under the decree in this case, the record of this court showed (1) that Hiram Price had been made a party; (2) that he had appeared here, and stated on the record that he claimed a vendor's lien on the property now in controversy; (3) that he asked and obtained leave to prosecute a suit to enforce that lien in the state court. And this record was clearly sufficient to charge such purchaser with notice of the suit in the state court.

It is said, however, that the suit in the state court was dismissed, and that, therefore, the notice was not sufficient. Ordinarily this would be so; but it must be observed that this case is very peculiar in its facts and circumstances. No suit could be brought in the state court after the appointment of the receiver without the permission of this court. After such permission was granted, as shown by the record in this case, there was sufficient of record to require the purchaser to take notice of the proceedings in both courts. When the case in the state court was dismissed, it was expressly stated in the record that the dismissal was without prejudice to the right of said Price to bring another suit or to prosecute said claim in the United States circuit court for Iowa.

Immediately upon the dismissal of said suit the complainant filed his answer and cross-bill in this suit. The record of the state court was of itself notice that this might or would be done. Besides, the purchaser at the foreclosure sale, under the peculiar language of the decree, was bound to take notice of all subsequent proceedings in the case in this court. The decree ordering a sale of the mortgaged property was entered at an early stage of the proceedings, and expressly directed that said sale should be made subject to any prior liens which might thereafter be established against the mortgaged property in this court. But few of the parties defendant had formally claimed such prior liens at the time that decree was entered. No defaults had been entered against any of the defendants, and it was clearly the intention of the court to retain jurisdiction of the case for the purpose of determining what, if any, prior liens in favor of any of the parties defendant should be enforced against the mortgaged property.

The reservation in the decree cannot, with any propriety, be construed as applying only to such defendants as had at that time for-

mally claimed a prior lien. It was intended by the clause of reservation to save and protect the rights and equities of all the parties to the suit as they might thereafter appear. We hold, therefore, that enough appeared upon the record in this court, and in the state court, to put the purchaser upon inquiry concerning the claim of the present complainant of a vendor's lien upon the mortgaged property, and that, therefore, the Chicago, Milwaukee & St. Paul Railway Company is not a purchaser without notice of said claim.

The conveyance by the marshal to Rutten & Bonn, and by them to the Davenport & Northwestern Railway Company, and by the latter company to the Chicago, Milwaukee & St. Paul Railway Company, the present owner, were all made pending this suit, and each of the purchasers must, upon the principles already stated, be held to notice of the present complainant's rights. He is not estopped by lapse of time, and has been guilty of no laches. He brought his suit in due time, and has prosecuted it ever since with due diligence, either in this court or in the state court, with our consent and approval. Upon the whole case, we are constrained to hold that the decree hereinbefore rendered in favor of the complainant was strictly in accordance with equity, and should not be set aside.

LOVE, J., concurs.