# Charles Cooper et al., Composing Firm of C. G. Cooper & Company, Plffs. in Err., *v.* William Whitmer et al.

Parol evidence is inadmissible—in the case of a contract in writing which provided for the sale of personal property and "lease satisfactory security" (the word "lease" having been interlined above the word "satisfactory" before signing), and which further provided that there was no verbal understanding, other than that expressly stated therein—to prove that the understanding of the parties was that if satisfactory security could not be given for a sale on credit, the property was to be leased.

A lease taken in accordance with this contract is a conditional sale, and not a bailment. Brunswick & B. Co. v. Hoover, 95 Pa. 508, 40 Am. Rep. 674.

Where the evidence is conflicting, it is a question for the jury whether a second lease of the same property abrogated the previous contract, so as to constitute a bailment.

(Decided October 4, 1886.)

Error to the Common Pleas of Northumberland County to review a judgment on a verdict for defendants in a feigned issue under the sheriffs' interpleader act. Affirmed.

---

Note.—For the change of a conditional sale into a bailment by a second contract, see Goss Printing Press Co. v. Jordan, 171 Pa. 474, 32 Atl. 1031.

On July 18, 1882, an agreement in writing, signed by C. & G. Cooper & Company, per D. L. Travis, Agent, provided for the sale of certain machinery to J. J. and J. S. Coleman. The agreement stipulated for payment in cash and deferred payments and proceeded:

"For which deferred payments the second party is to give their negotiable promissory notes, payable to the order of C. & G. Cooper & Company, with interest at 6 per cent per annum,
  lease
and satisfactory security. . . . It is understood that no warranty or verbal understanding of any kind exists in regard to the present contract, other than what is herein expressly stated; and all claims for damages which are not presented within two months from the delivery of said machinery, are hereby expressly waived by said second party. It is further agreed that the title, ownership, and right of possession of the aforesaid machinery shall remain in the above first party until the cash is paid and the notes executed with security, as above agreed, when the same shall vest in the party of the second part."

It was admitted that the word "lease" was interlined in this agreement, above the word "satisfactory," before the parties signed. As interlined it would read "and lease satisfactory security" or "and satisfactory lease security."

The cash payment was made and the machinery shipped and taken, by the Colemans, to a property where they proposed to set it up. On September 1, 1882, a lease of this same property by Cooper & Company to the Colemans was prepared by D. L. Travis and signed by the Colemans. It provided for deferred payments similar to those mentioned in the original lease, with further stipulations that, in default of payment, Cooper & Company might take away the property; but, in case of no default, a bill of sale was to be executed. The payments were not made, and on April 24, 1884, another lease prepared by S. J. Brent, agent for Cooper & Company, was executed by J. J. Coleman, who had bought out J. S. Coleman. This lease was similar in terms to that of September 1, 1882, except that the deferred payments agrgegated the amount of those contained in the previous lease, with interest. On April 7, 1885, the property was levied upon by William Whitmer and others, creditors of Coleman. Cooper & Company claimed the property and this issue was directed, under the sheriffs' interpleader act, to try the title to the property.

On the trial before ROCKEFELLER, P. J., D. L. Travis, being called for the plaintiffs, testified that the machinery was put up on property of a third party; that possession was not delivered until the first lease was signed; that this lease was signed because the Colemans could not give satisfactory security; and that it nullified the original agreement. On cross examination, however, he testified, *inter alia,* to the following:

*Q.* Then you took this lease of September 1, 1882, because it was the lease provided for in the contract of the 18th of July, 1882 ?

*A.* Yes, when they failed on the security.

*Q.* That is the lease you took in pursuance of the lease provision in the contract of July 18, 1882 ?

*A.* The interlining had reference to that lease.

*Q.* This lease was taken in accordance with the contract as interlined or agreed upon on July 18, 1882 ?

*A.* Yes, sir.

*Q.* You thought it was your duty to take a lease from them bcause you had agreed to that ?

*A.* They claimed a right to it under the lease.

*Q.* They claimed the right to give you a lease under that contract, didn't they ?

*A.* Yes, sir.

*Q.* Then, as I understand you, so there will be no mistake about it, all you did was to go there after the mill had been shipped by C. & G. Cooper & Company, taken away from the depot, and put upon somebody's land where the Colemans proposed to use it and saw with it; all you did was to go there and help put up the mill and then take this lease from them ?

*A.* I can't say as to that being all I did. I was there several days, testing the mill to see that it worked all right. When it worked all right and was satisfactory to them, then I took this lease from them. That ended my transaction with the Coleman Brothers when they delivered over this lease.

Plaintiffs' counsel proposed to show by this witness that at the time of entering into the contract to which the witness refers, and before the contract was signed, it was understood between the parties that there was to be an absolute sale of this machinery to J. J. and J. S. Coleman; that they had agreed to give sat-

isfactory personal security on the notes that are provided for in
the agreement; that at the time of signing the agreement the
matter of satisfactory personal security was discussed, and that
the Colemans asked the witness if they could not get the satis-
factory personal security what then could be done; that the wit-
ness then said if they did not get the satisfactory personal secur-
ity he would agree to give them the machinery stipulated for in
the agreement upon a lease, and for that reason and with that
understanding at the time of making the agreement, the word
"lease" was inserted in the agreement.

This, for the purpose of showing that the interlineation of the
word "lease" was made at the time of the execution of the agree-
ment, and upon that understanding it was interlined.

Per Curiam: It may be proved by the witness that the word
"lease" was interlined before the signing and executing the
agreement by the parties. But I am of opinion that the written
contract must speak for itself. Even if such were not the law,
it is expressly agreed therein that no verbal understanding
of any kind exists in regard to the same, other than what is there-
in expressly stated; and I am of opinion, therefore, that the par-
ties cannot give parol evidence to aid it unless there is some am-
biguity therein or some technical word or term, used in trade or
business, necessary to be proved in order to explain the meaning
of the parties. The evidence is admitted as far as I have stat-
ed; the balance is rejected, and plaintiffs except. Bill sealed.

S. J. Brent testified that the lease of April 24, 1884, abrogat-
ed the previous lease and agreement. This was denied by Cole-
man.

The court instructed the jury that the agreement of July 18,
1882, and the lease of September 1, 1882, constituted a sale;
and left to the jury to determine whether the lease of April 24,
1884, abrogated the previous agreements of the parties, and, if
they so find, the transaction was a bailment and not a sale, and
the verdict should be for the plaintiffs.

The plaintiffs requested the court to charge the jury as fol-
lows:

1. That although the agreement of sale dated July 18, 1882,
by the insertion of the word "lease" interlined, may be construed
by itself as a conditional sale, yet if, before the final delivery of
the property, J. J. and J. S. Coleman agreed to receive the prop-
erty under the lease of September 1, 1882, there being at that

time no creditors of J. J. and J. S. Coleman, then J. J. and J. S. Coleman held the property under the lease of September 1, 1882, and were the bailees of the plaintiffs in this suit, and the verdict should be for the plaintiffs.

Per Curiam: I cannot answer this point as requested, for the agreement of July 18, 1882, provides for lease security, and Mr. Travis, plaintiffs' witness, proved that the lease of September 1, 1882, was taken in accordance therewith.

2. That if the jury believe the evidence of D. L. Travis, the taking of the lease of September 1, 1882, was an abrogation of the agreement of sale of July 18, 1882, and J. J. and J. S. Coleman became the bailees of plaintiffs, and the verdict should be in favor of plaintiffs. Refused.

3. That the lease of April 24, 1884, made with plaintiffs by J. J. Coleman, was a new contract and *ipso facto* abrogated all that had previously taken place between the parties, and the attornment to the plaintiffs under the lease was a sufficient acknowledgment of the possession and title of the plaintiffs in the absence of any creditor having a lien or claim upon the said property, and the verdict should be for the plaintiffs.

Per Curiam: I cannot affirm this point. I cannot say as a matter of law that the lease of April 24, 1884, was a new contract and *ipso facto* abrogated all that had previously taken place between the parties; and I refer you to what I have said in the general charge in relation to the agreement testified to by S. J. Brent, made between him, as agent for plaintiffs, and J. J. Coleman, at the time the lease of April 24, 1884, was executed.

The assignments of error specified the exclusion of the offer of evidence and the answers to the points above.

*Dill & Beale* and *Horace P. Glover,* for plaintiffs in error.— It is manifest that the parol evidence contradicts nothing expressed in the writing, but only an implication from what is written. Chalfant v. Williams, 35 Pa. 215.

Though parol evidence is inadmissible to contradict or vary the terms of a written agreement of guaranty, yet such explanations of the subject-matter may be given as shall give those terms their intended effect. Aldridge v. Eshleman, 46 Pa. 420; Kostenbader v. Peters, 80 Pa. 441; Barnhart v. Riddle, 29 Pa. 92.

In Brunswick & B. Co. v. Hoover, 95 Pa. 508, 40 Am. Rep. 674, there was a plain stipulation for a lease as security for the

unpaid purchase money, and no obscurity whatever as to the use of the term.

The contract of July 18, 1882, was abrogated by the lease of September 1, 1882. Rowe v. Sharp, 51 Pa. 26.

*C. R. Savidge* and *R. 4. Mahon*, for defendants in error.— Where parties, without fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. Martin v. Berens, 67 Pa. 459; Thorne v. Warfflein, 100 Pa. 519; Smith v. National L. Ins. Co. 103 Pa. 177, 49 Am. Rep. 121.

Mr. Justice GREEN says of a similar agreement, as to a verbal understanding, in a written contract: "This is a proper provision, and is the law of the parties, which we have no power to alter." Jacobs v. Ins. Co. 16 Pittsb. L. J. 2. The case is ruled by Brunswick & B. Co. v. Hoover, 95 Pa. 508, 40 Am. Rep. 674.

OPINION BY MR. JUSTICE GREEN:

We think the learned court below was entirely right, both in the rejection of the offer of parol proof, and in the answers to the points of the plaintiffs. As to the offer of testimony, it contained no proposal to prove any fraud or mistake in the execution of the instrument and no omission of anything agreed upon and not inserted. On the contrary, the proof was distinct and not at all disputed that the word "lease" was interlined at the time of execution and before the signatures were affixed. The whole purpose of the offer was to prove what was the understanding of the parties as to the meaning of the agreement. But that is precisely what cannot be done by parol evidence. The writing must speak for itself and its meaning must be declared by the courts. Moreover, there was an express provision in the contract that there was no verbal understanding other than what was expressly stated in the instrument. To admit parol evidence of the understanding in such circumstances would require a disregard of this provision, as well as of the rule of law.

The word "lease" being by common consent a part of the written contract of the parties, the case comes clearly within the ruling of this court in Brunswick & B. Co. v. Hoover, 95 Pa. 508, 40 Am. Rep. 674. The agreement is beyond doubt a sale of the property with a provision for a lease security which was

good enough between the parties, but worthless as against creditors. In view of the testimony of Mr. Travis, the plaintiffs' witness, it was impossible for the court to affirm the plaintiffs' first and second points; and when it was left to the jury to say whether the lease of April 24, 1884, was a new contract, abrogating all that was previously done between the parties, they certainly gave to the plaintiffs all they could ask as to the effect of that paper. The court distinctly told the jury that if they found that the original agreement of July 18, 1882, and the lease of September 1, 1882, were given up and considered as abrogated by the parties and a new arrangement made by the lease of April 24, 1884, they should find for the plaintiffs.

As there was testimony on both sides of this question, the court could not decide it, but necessarily left it to the jury. Coleman distinctly testified that such was not the case and there were other facts corroborating him; hence, notwithstanding Brent's testimony to the contrary, the question was a disputed one and within the province of the jury to whom it was fairly left, and decided for the defendants.

Judgment affirmed.