RYLE et al. v. KNOWLES LOOM WORKS.

(Circuit Court of Appeals, Third Circuit. June 29, 1898.)

1. CONDITIONAL SALES—RIGHTS OF CREDITORS.
   In Pennsylvania a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase price is paid, is void as to creditors of the vendee and innocent purchasers; and this rule applies, whatever the form of the agreement.

2. BAILMENT—RIGHTS OF CREDITOR.
   Where personal property is delivered under a contract of bailment, accompanied with an agreement for a future sale to the bailee on the payment of a certain price, the ownership of the bailor is preserved, and the transaction is valid, even as against the creditors of the bailee and innocent purchasers.

3. CONDITIONAL SALES—RIGHTS OF CREDITORS—LEASE AS SECURITY.
   In Pennsylvania, a reservation of title, by an instrument in the form of a lease, as security for the purchase price of personal property sold and delivered, is unavailing as against creditors and innocent purchasers; and it matters not that the lease was contemplated from the beginning, and the property delivered in pursuance of that contemplation.

4. REPLEVIN—DEFENSES—RIGHTS OF MORTGAGE BONDHOLDERS.
   In replevin for machinery sold by the plaintiff, with reservation of title as security for the purchase price, the rights of innocent mortgage bondholders under a mortgage executed by the vendee are available as a defense.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action of replevin by the Knowles Loom Works against William Ryle and others to recover possession of certain machinery. In the circuit court, verdict and judgment were given for plaintiff, and the defendants sued out this writ of error.

Robert B. Honeyman, for plaintiffs in error.

Benno Loewy and J. M. Rommell, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

ACHESON, Circuit Judge. It is, and long has been, the established rule in Pennsylvania that a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase price is paid, is ineffectual and void as respects the creditors of the vendee and innocent purchasers; and the rule applies, whatever may be the form of the agreement. Haak v. Linderman, 64 Pa. St. 499; Stadtfeld v. Huntsman, 92 Pa. St. 53; Thompson v. Paret, 94 Pa. St. 275; Brunswick & Balke Co. v. Hoover, 95 Pa. St. 508; Forrest v. Nelson, 108 Pa. St. 481; Dearborn v. Raysor, 132 Pa. St. 231, 20 Atl. 690; Farquhar v. McAlevy, 142 Pa. St. 233, 21 Atl. 811; Ott v. Sweatman, 166 Pa. St. 217, 31 Atl. 102. But where personal

property is delivered under a contract of bailment, accompanied with an agreement for a future sale to the bailee on the payment of a certain price, the ownership of the bailor is preserved, and the transaction is valid, even as against the creditors of the bailee and purchasers. Rowe v. Sharp, 51 Pa. St. 26; Enlow v. Klein, 79 Pa. St. 488; Printing-Press Co. v. Jordan, 171 Pa. St. 474, 32 Atl. 1031. Within which of the two above-stated rules does the present case fall? The material facts are these:

On March 16, 1895, the Cutter Silk Manufacturing Company signed and delivered to the plaintiff in this replevin suit (Knowles Loom Works), and the latter accepted and agreed to, the following written proposal or order:

"New York, March 16th, 1895.

"Knowles Loom Works—Gentlemen: Please build for us one hundred silk looms, 35 in. 20 harness 4x4 box, with multiplier and angular drive ½ each right and left, with Jacquards, 600 hooks rise and fall, three levers; price, two hundred and eighty dollars each. Terms of payment: Notes bearing interest, 6 per cent. per annum, and maturing twelve months from the average date of delivery, but to be written 'six months,' for convenience, and renewed as per above. The Knowles Loom Works to own the machinery until paid for, as per their usual form, and to hold, also, in first mortgage bonds of the Cutter Silk Mfg. Co., fifteen thousand [dollars], as collateral security towards the payment of said notes. Cutter Silk Mfg. Co.,

"By John D. Cutter, Prest."

In pursuance of the contract thus entered into, the plaintiff delivered to the Cutter Silk Manufacturing Company the specified machinery, and the same was set up in the company's mill at West Bethlehem, Pa.; the looms being fastened to the floor by the ordinary leg screws, and the Jacquards attached to the looms. The delivery began early in April. One-half of the machinery was delivered and set up in the mill before May 18th, and all of it was delivered and set up before July 12, 1895, except 18 Jacquards, of the value of $810, which were delivered shortly after the date last mentioned. On May 18, 1895, the Cutter Silk Manufacturing Company executed and delivered its mortgage on its mill, including "all machinery now placed or hereafter to be placed on said mortgaged premises," to the E. P. Wilbur Trust Company, in trust to secure an issue of $100,000 of the mortgagor's bonds, payable to bearer; and on May 22, 1895, the mortgagee accepted the trust. The mortgage was duly recorded on May 23, 1895. The price of the entire machinery delivered as above mentioned by the plaintiff was $29,650. For this sum the Cutter Silk Manufacturing Company on July 12, 1895, gave to the plaintiff its promissory notes, namely, its two notes dated July 12, 1895, payable in 30 days, one for $3,650, with interest, and one for $4,000. with interest; its four notes dated July 1, 1895, each for $5,000, payable six months after date, with interest; and its note dated July 1, 1895, for $2,000, payable six months after date, with interest. On the same day these notes were given, namely, July 12, 1895, the plaintiff and the Cutter Silk Manufacturing Company executed the following instrument of writing:

"Articles of agreement made and concluded this first day of July, A. D. 1895, between the Knowles Loom Works, of Worcester, in the county of Worcester and commonwealth of Massachusetts, of the one part, and Cut-

87 F.—62

ter Silk Mfg. Co., of Bethlehem, county of Lehigh, state of Pennsylvania, of the other part: I. The said Knowles Loom Works doth hereby rent unto the said Cutter Silk Mfg. Co. the following described property, to wit: 100—35″—20 harness 4x4 box silk loom, with Jacquards; piano card-cutting machine, repeater, and press,—for the period of one year from the date hereof, at a rental or price of twenty-two thousand dollars per annum; said rental to be paid on or before the first day of July, 1896. II. The said Knowles Loom Works doth agree to make a sale of said machinery to said Cutter Silk Mfg. Co., at any time prior to the expiration of this lease, for the cash price or sum of twenty-two thousand dollars, provided the herein reserved rental and insurance shall have been promptly paid, and will allow as a credit on such purchase all of the said rental so paid. III. The said Cutter Silk Mfg. Co. agrees to pay, promptly as they shall become due, to the said Knowles Loom Works, both the said rental and all expenses incurred by it during the continuance of this lease in keeping said machinery insured; to maintain the same in good order and repair during said term; and in the event of any failure to pay the said rent as it becomes due, or at the termination of this lease, to immediately surrender said machinery to said Knowles Loom Works, its successors or assigns, or allow it or them to retake possession of the same. In witness whereof, the said parties hereunto set their hands and seals the day and year first above written.                          Knowles Loom Works. [Seal.]
                                                          "J. M. Russell, Cashier.
                                          "Cutter Silk Mfg. Co.        [Seal.]
                                                          "John D. Cutter, Prest.
"Sealed and delivered in presence of Frank E. Stevens."

The oral testimony respecting this paper was conflicting. Mr. Stevens, the vice president of the Cutter Silk Manufacturing Company, testified that a lease was never mentioned prior to July 12, 1895. On the other hand, Mr. Markoe, who conducted the original negotiations on the part of the plaintiff, stated that it was "understood between Mr. Cutter and myself that a lease would be drawn up to that effect"; and upon cross-examination he testified thus:

"X-Q. Was the word 'lease' used between you and Mr. Cutter, or a suggestion about reservation of title? A. The question of lease,—that the looms were to remain the property of the Knowles Loom Works until paid for. By the Court: X-Q. Was it said how? A. The usual form that our people used for lease at that time. X-Q. Then the word 'lease' was mentioned? A. It was."

The Cutter Silk Manufacturing Company paid its two notes at 30 days, aggregating $7,650, at or before the maturity thereof. Its other notes, aggregating $22,000, were renewed at maturity. The renewal notes were not paid. On March 30, 1896, the Cutter Silk Manufacturing Company made a voluntary assignment for the benefit of its creditors. Before this assignment at least $45,000 of the bonds secured by the mortgage of May 13, 1895, had been negotiated, and were in the hands of bona fide holders for value. Prior to the bringing of this suit the defendant William Ryle had become the purchaser and holder of these bonds, and he had also purchased the equity of redemption in the mortgaged premises from the voluntary assignee, and he was in possession of the mill and machinery when the writ of replevin issued.

The court below instructed the jury, as matter of law, that the transaction between the plaintiff and the Cutter Silk Manufacturing Company respecting this machinery was a bailment, and, therefore, that the plaintiff had a right to recover the value of the machinery in this

action. The only question submitted to the jury was that of value. We are now to determine whether these instructions were correct.

In our treatment of this case, we naturally begin with the paper of March 16, 1895, showing the original contract relating to this machinery. Substantially the whole of the machinery was delivered on the footing of that paper alone. It was the only contract on the subject in existence when the trust mortgage took effect. Now, the paper of March 16th fixed the purchase price of the machinery, and the terms of payment. Interest-bearing notes were to be given and received in payment; and, what is very significant, the Knowles Loom Works was to take and hold $15,000 of the mortgage bonds of the Cutter Silk Manufacturing Company as collateral security for the payment of the notes. These provisions, we think, plainly import a sale of the machinery. The stipulation that the Knowles Loom Works was "to own the machinery until paid for" seems to us to negative the idea that the parties had in view a bailment (Summerson v. Hicks, 134 Pa. St. 566, 569, 19 Atl. 808); for, upon a bailment, ownership remains in the bailor, as of course. This stipulation implies a sale with a reservation of title, to secure the purchase price. A lease is not named in the paper. If, however, the words "as per their usual form" are referable to a lease, they must be read in connection with the context: "The Knowles Loom Works to own the machinery until paid for, as per their usual form, and to hold, also, in first mortgage bonds of the Cutter Silk Mfg. Co., fifteen thousand [dollars], as collateral security towards the payment of said notes." If a lease was here contemplated, undoubtedly it was a lease to secure the purchase price of the machinery. The oral testimony put no different face upon the matter. But it is the declared law of Pennsylvania that a reservation of title, by an instrument in the form of a lease, as security for the purchase price of personal property sold and delivered, is unavailing as against creditors and innocent purchasers; and it matters not that the lease was contemplated from the beginning, and the property was delivered in pursuance of that contemplation. Brunswick & Balke Co. v. Hoover, supra; Farquhar v. McAlevy, supra. In Cooper v. Whitmer, 6 Atl. 571, the supreme court of Pennsylvania said:

"The word 'lease' being by common consent part of the written contract of the parties, the case comes clearly within the ruling of this court in Brunswick & Balke Co. v. Hoover, 95 Pa. St. 508. The agreement is, beyond doubt, a sale of the property, with a provision for a lease security which was good enough between the parties, but worthless as against creditors."

In Farquhar v. McAlevy, as in Brunswick & Balke Co. v. Hoover, the lease was stipulated for in the original contract, which, as here, was in the form of an order for machinery.

We find nothing in what was done on July 12, 1895, to change the complexion of the case. Evidently the short-time notes for $7,650 were given and taken on account of the purchase money of the machinery. It is idle to suggest that these notes represent rent. They were not embraced in the so-called lease executed that day. That instrument covered only the balance of the purchase price, namely, $22,000, for which the other notes were given. The paper calls for

"a rental or price of twenty-two thousand dollars per annum." This was rental in name, but price in fact. The lease ran for a single year only, and this large lump sum was to be paid at the end of the year, or before. Regarding the two instruments of March 16th and July 12th as parts of one and the same transaction,—which is the most favorable view that can be taken for the Knowles Loom Works, —the conclusion is irresistible that the transaction was not a bailment, but a sale, of the machinery, with a lease security for the price. The case is not distinguishable from those of Brunswick & Balke Co. v. Hoover, Cooper v. Whitmer, and Farquhar v. McAlevy, supra.

In Summerson v. Hicks, supra, the parties, under date of October 31, 1885, signed the following paper:

"This is to certify that I have this day leased to John Summerson 1 pair of dark-bay horses, for the sum of one hundred and twenty-five dollars, to be paid by the first of April, 1886; and in case the said John Summerson shall fail to make such payment as above agreed, to me (Mary Hicks), then I shall have full and free possession of said horse team; and it is further agreed that the ownership shall remain in hands of Mary Hicks until payment is made in full."

Concerning this paper the supreme court of Pennsylvania, speaking by Mr. Justice Mitchell, said:

"It is called a lease, but it is manifestly a sale. No term is stipulated for the hiring, or any rate per month or per annum. On the contrary, it is merely said that the horses are leased for a lump sum of one hundred and twenty-five dollars. But what is conclusive of the character of the transaction, is the stipulation that 'the ownership shall remain in Mary Hicks until payment is made in full.' If it was merely a hiring, the ownership would have remained in Mrs. Hicks all the time, without any such stipulation."

All the indicia of a sale here commented on are present in this case, taking into account the two papers of March 16th and July 12th.

The authority of the decisions upon which we base our judgment is not in any degree shaken by the case of Printing-Press Co. v. Jordan, 171 Pa. St. 474, 32 Atl. 1031. There, while the original intention of the parties was to make a sale, yet, before their purpose was consummated, and when the first agreement still remained wholly executory, it was superseded by a contract of bailment. The printing press had not been delivered or accepted, but had been set up for trial, merely. No intervening rights had sprung up, and the parties were entirely free to contract with respect to the press. Here the facts are essentially different. As we have seen, the great bulk of the machinery was delivered and accepted under the first contract, and the property had become subject to the trust mortgage before the second instrument was executed.

To the amount of $45,000 of the mortgage bonds, the defendant William Ryle is clothed with the rights of the original bona fide holders, who took them, it would seem, free from notice of the alleged lease. Porter v. Steel Co., 122 U. S. 267, 283, 7 Sup. Ct. 1206. As against the innocent mortgage bondholders, and those claiming under them, the plaintiff had no right to strip the mill of this machinery and carry it away. Undoubtedly the rights of the mortgage bondholders are available as a defense here. In replevin a plea of property puts the plaintiff to proof of title in himself, and his right to exclusive pos-

session. Reinheimer v. Hemingway, 35 Pa. St. 432, 438; Mathias v. Sellers, 86 Pa. St. 486, 492. The judgment is reversed, and the cause is remanded to the circuit court, with direction to set aside the verdict and grant a new trial.