## TILFORD v. ATLANTIC MATCH CO.

(Circuit Court, D. New Jersey. February 18, 1905.)

1. CORPORATIONS—PERSONAL PROPERTY—OWNERSHIP.

The N. Match Company, a mere stockholding corporation without any plant, acquired all the capital stock of the A. Match Company, with the exception of five shares. E., who was vice president and general manager of both companies, accepted a proposition to furnish the A. Company with a certain boiler, title to remain in the seller until paid for, the acceptance being signed by the N. Company by E., vice president, and directed the seller to place the name of the N. Company on the front of the boiler and ship to the A. Company. No payments were made by the N. Company, two payments being made by the A. Company, and the final payment was made from the proceeds of a sale of the boiler after both companies had been placed in the hands of receivers. Held, that the N. Company never acquired any interest in the boiler, and that its receiver was not entitled to the balance of the fund derived from its sale.

2. SAME—MORTGAGES—PRIORITY.

Where a corporation purchased a boiler under a contract reserving the title in the seller until paid for, and only two-thirds of the price had been paid at the time a receiver was appointed for the corporation, the boiler was not covered by a mortgage previously given by the corporation to secure bonds covering all property of the corporation, real and personal, which it then owned or might thereafter at any time acquire.

3. SAME—CONDITIONAL SALES—SUBSEQUENT PURCHASER—MORTGAGEE.

A holder of bonds of a corporation, secured by a trust mortgage executed prior to the corporation's purchase of a boiler under a conditional contract of sale reserving title in the seller until the price was paid, was neither a subsequent purchaser nor mortgagee of the corporation as to such boiler, within a New Jersey statute making conditional contracts of sale not recorded as provided for therein void as to judgment creditors and subsequent purchasers and mortgagees in good faith.

In Equity. In matter of claims against fund in court.

Edwin G. Adams, for receiver of National Match Company.

Thomas B. Harned, for Champion Construction Company.

Lindabury, Depue & Faulks, for receivers of Atlantic Match Company.

LANNING, District Judge. This matter comes before the court upon an application to determine the validity of the respective claims of the receiver of the National Match Company, of the Champion Construction Company, and of the receivers of the Atlantic Match Company to the sum of $869, being part of the proceeds of the sale of the boiler hereinafter mentioned. The facts are as follows: On August 15, 1900, the Atlantic Match Company, a corporation of New Jersey, executed to the Real Estate, Loan & Trust Company of Camden, N. J., as trustee, a mortgage to secure $1,000,000 of its bonds. The mortgage covered all real and personal property owned by the company at the date of its execution, and all real and personal property that it might thereafter at any time acquire. It was duly recorded on October 2, 1900, both as a real estate mortgage and as a chattel mortgage. In August, 1901, the National Match Company, also a corporation of New Jersey, acquired all of the capital stock of the Atlantic Match Company,

except five shares standing in the names of the latter company's directors. The Atlantic Match Company had a plant and factory in operation, but the National Match Company never owned any plant or factory. On October 8, 1901, the Stirling Company submitted to the Atlantic Match Company a written proposal as follows:

"Phila., Pa., Oct. 8, 1901.

"For and in consideration of the hereinafter named amount we propose to furnish to Atlantic Match Company, Philadelphia, Pa., 250 horse power water tube boiler (here follow specifications) to be delivered f. o. b. cars Camden, New Jersey, for the sum of $2793, one-third to be paid when contract is accepted, one-third on delivery of certain documents, balance when boiler is erected ready for brick-work, final payment to be guaranteed as understood when contract is completed.

"This proposal will be void if not accepted within thirty days. All previous communications between the parties hereto either verbal or in writing are hereby abrogated and this proposal shall constitute a contract. Any modifications in this proposal must be in writing and attached hereto. We assume no liability for damages on account of delays. The title and right of possession to the material we furnish remains in the Stirling Company until the same has been fully paid for in cash.

"The Stirling Company,
"By James Meily,
"Fisher."

On November 11, 1901, the president of the Atlantic Match Company was also president of the National Match Company, and certain other persons, being directors of the Atlantic Match Company, were also directors of the National Match Company, and F. C. Eaton was then the vice president and general manager of both companies. On that day—November 11, 1901—F. C. Eaton indorsed on the above proposal the following acceptance:

"Nov. 11, 1901.

"The Stirling Company, Chicago, Ill.—Gentlemen: We hereby accept the foregoing proposition. Name required on front, National Match Co. Description of fuel to be used, Soft Coal and Wood Shavings. Date to be delivered, Dec. 1st, 1901. Shipments to be consigned to Atlantic Match Co., Camden, New Jersey.

"Yours truly,                    National Match Co.
"By F. C. Eaton, Vice-Prest."

Between November 11, 1901, and July 7, 1902, the exact date not appearing, the Stirling Company delivered upon the premises of the Atlantic Match Company a boiler of the character mentioned in the proposal, and between the same dates the Atlantic Match Company made two payments of $931 each on account of the boiler. The boiler was purchased for the purpose of being permanently installed in the plant of the Atlantic Match Company in lieu of an old and inadequate boiler then in use. On December 31, 1901, the Atlantic Match Company executed and delivered to Thomas W. Synnott its promissory notes to the amount of $91,150, and, as collateral security for the payment thereof, issued and delivered to Synnott 250 of its above-mentioned mortgage bonds, which bonds were the only ones ever issued by the company. These notes, which fell due in six months after their date, were not paid, and subsequent to their maturity Synnott sold them to the Champion Construction Company, which company then came into possession of both the notes and the bonds collateral thereto. On July 7, 1902, the Atlantic Match Company, under an order of this court,

was put into the hands of receivers. Besides its indebtedness on the notes above mentioned, at the time of the appointment of the receivers it was indebted to general creditors in a sum exceeding $60,000. On September 7, 1902, the National Match Company, under an order of this court, was put into the hands of a receiver. In November, 1902, the Stirling Company demanded payment of the third installment of the purchase price of the above-mentioned boiler, and threatened, if such payment were not made, to take possession of the boiler and forfeit the payments previously made to it. The boiler had never been set up or put into use by the Atlantic Match Company. When the Stirling Company threatened to take possession of it, the receiver of the National Match Company claimed it as the property of that company, the Champion Construction Company claimed that it was subject to the lien of the above-mentioned trust mortgage, and the receivers of the Atlantic Match Company claimed that it was the property of that company. In consequence of these conflicting claims, it was agreed on December 6, 1902, that the boiler should be sold for the sum of $1,800, that out of the proceeds of the sale there should be paid to the Stirling Company the sum of $931 in satisfaction of the third installment of the purchase price due to that Company, and that the right to the balance of $869 should be determined by this court upon the facts above stated.

The claim of the receiver of the National Match Company is clearly unsupported by the facts of the case. Notwithstanding the acceptance of the proposal of the Stirling Company was signed by F. C. Eaton as vice president of the National Match Company, and the name required to be placed on the front of the boiler was "National Match Co.," the National Match Company not only required the boiler to be consigned to the Atlantic Match Company, but permitted, if it did not require, the Atlantic Match Company to make two payments of $931 each on account of the purchase price. The plant at which the boiler was delivered was the plant of the Atlantic Match Company, and was operated by that company. The National Match Company had no plant. It simply held the capital stock of the Atlantic Match Company. Even the final payment upon the boiler was not made out of the treasury of the National Match Company, but out of the proceeds of the sale of the boiler. The National Match Company never acquired any legal or any equitable right to or interest in the boiler, and the claim of its receiver to the fund in question must be adjudged invalid.

Nor is the claim of the Champion Construction Company deemed valid. The lien of the mortgage given by the Atlantic Match Company undoubtedly extended to and covered all property the title to which was acquired by that company after the execution and record of the mortgage, whether the title so acquired was a legal or an equitable one. Toledo, etc., Railroad Company v. Hamilton, 134 U. S. 305, 10 Sup. Ct. 546, 33 L. Ed. 905; Central Trust Company v. Kneeland, 138 U. S. 419, 11 Sup. Ct. 357, 34 L. Ed. 1014. But did the Atlantic Match Company acquire any title, legal or equitable, to the boiler? The proposal of the Stirling Company and the acceptance of the proposal constituted a conditional sale. By the condition therein set forth the vendor reserved to itself the title to the boiler until the same should

have been fully paid for in cash. It is clear that under such a contract the Atlantic Match Company acquired no legal title previous to the date of the appointment of the receivers for that company, for at that time it had paid but two-thirds of the purchase money. For the same reason, it had then acquired no equitable title thereto. The investment of the Atlantic Match Company with the title, either legal or equitable, was made to depend upon full payment of the purchase price. The situation was not changed after the appointment of the receivers. Up to the time of the sale of the boiler the title thereto was vested absolutely in the Stirling Company. In Knowles Loom Works v. Ryle, 97 Fed. 730, 38 C. C. A. 494, a Pennsylvania case, it was held that the lien of a mortgage containing an after-acquired property clause did extend to, and cover property sold to the mortgagor upon a conditional sale after the date of the mortgage. But that case followed the rule established by a long series of opinions in the state courts of Pennsylvania that all conditional contracts of sale, where possession passes to the vendee and title is reserved in the vendor, are fraudulent and void as to creditors of the vendee and innocent purchasers. See, also, Ryle v. Knowles Loom Works, 87 Fed. 976, 31 C. C. A. 340. In New Jersey the Pennsylvania rule does not obtain. Here conditional contracts of sale are valid. Cole v. Berry, 42 N. J. Law, 308, 36 Am. Rep. 511. The statute of New Jersey, passed since the decision in Cole v. Berry, makes conditional contracts of sale that are not recorded as provided for in that act void only as to judgment creditors and subsequent purchasers and mortgagees in good faith. In the case in hand, the holder of the trust mortgage given by the Atlantic Match Company is neither a judgment creditor of that company nor a subsequent purchaser or mortgagee. The conclusion reached is that the Atlantic Match Company never acquired any interest in the boiler to which the lien of the mortgage could attach. The case of Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, is not a contrary authority. In that case certain cars were sold to a railroad company upon a conditional contract of sale, the condition being that the cars should remain the property of the vendor until paid for. In considering the right of the mortgagee, the court, at page 251, 99 U. S., 25 L. Ed. 339, said:

"They [the mortgagees] are in no sense purchasers of the cars. The mortgage attaches to the cars, if it attaches at all, because they are after-acquired property of the company; but as to that class of property it is well settled that the lien attaches subject to all the conditions with which it is incumbered when it comes into the hands of the mortgagor. The mortgagees take just such an interest in the property as the mortgagor acquired; no more, no less."

To the same effect is Myer v. Car Co., 102 U. S. 1, 26 L. Ed. 59. In Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, the leading case in the federal courts on the subject of conditional sales, Mr. Justice Bradley set forth principles which, it seems to me, are inconsistent with the idea that a conditional vendee of personal property, whose title has been reserved in the vendor until payment made, can, by any act of his, subject that property to any lien so long as the conditions of the sale have not been complied with by the conditional vendee or waived by the vendor. The contract before me was not an absolute sale. It was an agreement to sell upon a condition to be performed.

The Atlantic Match Company never performed the condition. It therefore acquired no title, legal or equitable. It simply held possession of the boiler, and even that possession was wholly by permission of the Stirling Company, who, by its contract, had reserved to itself not merely the title, but the right of possession. Whether, if the Stirling Company had taken possession of the boiler after receipt of two-thirds of the purchase price on the ground of the default of the Atlantic Match Company in the payment of the residue of the purchase price, the Atlantic Match Company could have required the refunding of any part of the purchase price paid, in accordance with the equitable principle stated in 1 Benjamin on Sales, § 433, is a question not before me.

The conclusion reached is that the claims of the receiver of the National Match Company and of the Champion Construction Company are invalid, and that the fund consequently belongs to the receivers of the Atlantic Match Company.