WILLIAM B. HARDING, assignee, *vs.* JOSEPH LEWENBERG.

Worcester.    October 2, 1899. — October 19, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & LORING, JJ.

*Conversion — Construction of Agreement — Title to After-acquired Property.*

If an agreement, executed for the sale by A. of a stock of goods and fixtures in a store to B., to be paid for by instalments from the gross weekly sales, provides that the title to the property shall remain in A., but that B. shall have the right of possession of the property and the right to sell any portion of it in the ordinary course of business so long as he shall make the payments as specified, and shall by fresh purchases keep up the stock, A., upon taking possession of the store and the goods therein for a breach of the agreement, is not entitled to such goods as B. has bought to replenish the stock, the agreement being silent in regard to the ownership of such property.

TORT, by the assignee in insolvency of the estate of Mark H. Dann, for the conversion of certain personal property. Trial in the Superior Court, without a jury, before *Hopkins*, J., who refused certain rulings requested by the defendant, and found for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*W. C. Mellish*, for the defendant.

*H. L. Parker*, for the plaintiff.

KNOWLTON, J. The plaintiff is the duly elected assignee of one Dann. On October 14, 1897, the defendant, being the owner of a stock of goods and fixtures in a store, made an agreement in writing to sell them to Dann for the sum of $12,286, of which $500 was to be paid on that day in cash. The stipulation as to the payment of the balance was in these words: "One half, or $5,893, to be paid by one half of the gross weekly sales of the business to be carried on in said store by said Dann, said payments to be made weekly until said $5,893 has been fully paid; thereupon said Dann shall pay to the said Lewenberg one third of the gross weekly sales in said business until the further sum of $2,946.50 has been paid; and thereupon said Dann shall pay to the said Lewenberg one fourth of the gross weekly sales in said business, until the final instalment of said purchase price, to wit, $2,946.50, shall have been fully paid."

Then follows this provision : " Upon receipt of payment in full as hereinbefore stipulated, the said Lewenberg shall execute and deliver to the said Dann a bill of sale of said stock and fixtures containing full covenants of warranty, and until the said purchase price has been fully paid as hereinbefore stipulated, the title to said property shall be and remain in the said Lewenberg; but the said Dann shall have the right of possession of said property and the right to sell any portion of said property in the ordinary course of business so long as he shall fully and faithfully perform the conditions of payment herein recited, and shall by fresh purchases keep the quality, quantity, value, and amount of the stock equal to quality, quantity, and value and amount of the stock now in said store." Dann took possession of the store and goods about October 14, 1897, and held it until April, 1898, selling from the stock and buying new goods from time to time so long as he remained in possession. Previously to April, 1898, there had been a substantial breach of his agreement by fresh purchases to keep the stock equal in amount to the stock of October 14, 1897. For this reason the defendant then took possession of the store and of the goods therein, and afterwards appropriated them to his own use. There were in the store when the defendant took possession in April, 1898, goods purchased by Dann to replenish the stock amounting in value to $251.62, and the question is whether these passed to the defendant under the agreement in writing, so that he is not liable to the plaintiff for the conversion of them.

The defendant contends that the true meaning of the agreement is that the after-acquired property was to become his as fast as purchased and put with the stock, and therefore, he having taken possession, that the case comes within the principle stated in *Blanchard* v. *Cooke*, 144 Mass. 207, and *Bennett* v. *Bailey*, 150 Mass. 257. There cannot be a transfer of title by bringing in goods in this way, without a clear agreement to that effect. The writing contains no such agreement. It nowhere says that the defendant is to acquire any title under the instrument. It secures to him the ownership of the goods, which he agrees to sell until they are paid for, except that portion of them which is sold by Dann in the regular course of his business in accordance with the agreement. It is silent in regard to the

ownership of the property to be bought by Dann to keep up his stock. If it was the intention of the parties that the title to this property should pass to the defendant whenever it was put with the stock of goods, they failed to express it.

A sufficient reason for the requirement that the stock should be kept up is found in the provision that the defendant was to receive his payment from the gross weekly sales. So long as Dann kept up the stock to its full value the defendant might expect large and prompt payments, and when he failed to do this the defendant could take possession of his property which had not ·been sold.

The only exceptions are to the refusal of the court to give the two rulings requested. The facts hypothetically stated in the second request upon which the court was asked to rule that the defendant's title was good, do not include an agreement, either express or implied, that the after-acquired goods should pass from the ownership of Dann to that of the defendant. The rule in *Blanchard* v. *Cooke* is not to be extended to cases in which the intention to pass a title is doubtful. See *Tapfield* v. *Hillman*, 6 M. & G. 245; *Edwards* v. *Symons*, 65 Mich. 348; *Phillips* v. *Both*, 58 Iowa, 499; *Ludlum* v. *Rothschild*, 41 Minn. 218.

*Exceptions overruled.*