## DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 14380. Department Two. April 30, 1918.]

S. T. HILLS, *as Trustee in Bankruptcy of The Natatorium Company, Respondent,* v. C. D. STIMSON COMPANY, *Appellant.*[1]

FIXTURES—LEASE—CONSTRUCTION. Under a lease of a natatorium building requiring the lessee to install equipment, and providing that such personal property and equipment shall immediately become the property of the lessor as additional consideration for the lease, all the furniture and fixtures become the property of the lessor.

BANKRUPTCY—PREFERENCE—SURRENDER OF LEASED PREMISES. Surrender of leased premises by a bankrupt is not a preference, where the property was in fact and in law the property of the lessor, subject to payment of rent, and had reverted through forfeiture.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered July 2, 1917, upon findings in favor of the plaintiff, in an action of replevin, tried to the court. Reversed.

*Hughes, McMicken, Ramsey & Rupp,* for appellant.

*Cassius E. Gates, Jones & Riddell,* and *R. C. Hazen,* for respondent.

MOUNT, J.—This is an action in replevin, brought to recover possession of certain personal property al-

[1]Reported in 172 Pac. 1181.

leged to be of the value of $18,000. Issue was made as to the ownership of the property. Upon this issue the case was tried to the court without a jury, and resulted in a judgment in favor of the plaintiff for the return of certain of the property or its value, conceded to be $15,641. The defendant has appealed from that judgment.

The facts are briefly as follows: The respondent, S. T. Hills, is trustee in bankruptcy of the Natatorium Company, a corporation. On November 11, 1915, the Natatorium Company entered into an agreement with the appellant, by which agreement the appellant engaged to erect a building upon three certain lots in the city of Seattle for a natatorium building to be used by the Natatorium Company. It was agreed that the cost of this building should not exceed $115,000; that, as part consideration for the lease which was provided for in the agreement, the Natatorium Company was to pay $50,000 in cash to the appellant, and was also to install in the building, at the terminal of the pipe line necessary to connect the building with the salt water of Elliott Bay, salt-water pumps, dynamos, motors, laundry machinery and appliances, opera chairs, furniture, fixtures, filters and other necessary machinery and equipment, all of which, when installed in the building, should become a part of the property of the appellant. It was provided in the agreement that these appliances should not cost less than $20,000, except that it was provided that certain machinery, chairs, etc., might be purchased upon conditional sale, if not encumbered in excess of $4,328. It was also provided that, if the building and pipe line should cost in excess of $115,000, the Natatorium Company should pay such excess, and that all improvements placed upon the premises by the Natatorium Company should be deemed a part of the building and belong to the ap-

pellant, except as to any additional equipment or property in excess of said $20,000 worth of equipment, or replacement or substitutions thereof. The contract of lease also provided that, upon the completion of the building, when it should be occupied by the Natatorium Company, that company should pay a monthly rental of $900, payable in advance. It also provided that, in case the rent was not paid, the appellant might terminate the lease and take possession of the premises, subject to redemption within three months at an increased rental for that time. On March 6, 1916, a supplementary agreement between the parties was made which provided for installing a heating and lighting plant necessary for the natatorium building, at a cost of $10,000; and that the Natatorium Company should pay an additional rent on account of the heating and lighting plant in the sum of $100 per month. The building was entirely completed and the necessary equipment was placed therein prior to the 28th day of June, 1916. On that date the appellant turned over the possession of the building with the equipment, under the terms of the lease, to the Natatorium Company.

After the building was completed and had been taken possession of by the Natatorium Company, it was ascertained that the cost of the building had exceeded the stipulated price of $115,000. Materialmen were threatening to file liens against the property. The appellant then insisted that the Natatorium Company should pay the excess cost to the lien claimants in accordance with the terms of the original contract, and because of failure to do so, the appellant asserted its right to a forfeiture of the lease. The business of the Natatorium Company, from the time of its opening in June, 1916, had prospered for a short time, and afterwards it failed to meet its obligations. On the 25th day of August, 1916, another agreement was made be-

tween the appellant and the Natatorium Company, by which agreement it was recited that the Natatorium Company had failed to pay the cost of the building in excess of $115,000, and that the appellant was entitled to the surrender of the premises and the termination of the lease. It was thereupon stipulated that the Natatorium Company should surrender to the appellant the possession of the leased premises, together with the appurtenances and equipment used in the conduct of the business; and it was provided that the Natatorium Company should have six months, instead of three months stipulated in the original lease, in which to redeem the leasehold estate upon paying the appellant any sums it might pay off to clear the property of liens, with interest at 7 per cent, and further, paying the accrued rentals therein provided in case of redemption after forfeiture. This arrangement continued until the 17th day of November, 1916, when the Natatorium Company abandoned and surrendered the premises, together with all the equipment, to the appellant. Thereafter, within four months after August 25, 1916, the Natatorium Company was adjudged a bankrupt in the United States court, and Mr. Hills was appointed trustee in bankruptcy, and brought this action to recover certain of the equipment placed in the building prior to the delivery of the premises to the Natatorium Company, and certain goods held in store after that time.

There is substantially no dispute upon the facts in the case. The question of the ownership of the property depends largely, if not entirely, upon the construction of the contracts entered into between the Natatorium Company and the appellant. After carefully reading these contracts and the statement of facts in the case, we are convinced that all the property sued for, except that which was stipulated at the trial to belong

to the Natatorium Company, is clearly the property of the appellant. The original contract entered into between the parties on the 11th day of November, 1915, plainly and definitely recites that, in consideration for the lease, which was to run for a period of twenty-five years, the Natatorium Company was to pay to the appellant the sum of $50,000; that, in addition thereto, the Natatorium Company was to pay the cost of the building in excess of $115,000; and that it was required to install in the building machinery, appliances, chairs, furniture, fixtures, filters and other machinery and equipment, at a cost of not less than $20,000;

"and it is agreed that said personal property and equipment, together with all replacements and substitutions thereof, shall immediately become the property of the party of the first part, as additional consideration for this lease."

So it is apparent from the terms of the contract of lease itself that all the furniture, fixtures, etc., placed in the building immediately became the property of the appellant. The subsequent additional agreement with reference to a heating and lighting plant did not change the terms of the original lease, except to increase the rent $100 per month by reason of the additional cost of the heating and lighting plant paid for by the appellant. The agreement of August 25, 1916, made no change in the original agreement so far as the ownership of the property designated as appliances, etc., was concerned. That agreement simply modified the original lease agreement so that, upon failure of the Natatorium Company to pay the rent or to pay the obligations of the Natatorium Company, the appellant might take immediate possession of the premises and conduct the business as a natatorium for a period of six months, and if in the meantime the Natatorium Company paid up its obligations and rent at

an increased rental figure, then the property might be again taken possession of by the Natatorium Company. The possession of the property was surrendered to the appellant on August 25, 1916, and became, under the terms of the lease, the absolute property of the appellant because it was not redeemed within the time limited.

A careful examination of all the evidence in the case and a reading of the contracts, which were received in evidence, convinces us that the consideration for the original lease was $50,000 in cash, which is conceded to have been paid, the payment of the excess cost of the building over $115,000, and the purchase of $20,000 worth of furniture, etc.; and that these considerations were considerations for the original lease contract, and the furniture, etc., when placed in the building, became the property of the appellant company. The fact that the Natatorium Company went into bankruptcy within four months after August 25, 1916, did not change the character of the property. The machinery, appliances, etc., when put into the building, became immediately the property of the appellant. The surrender of the leased premises, together with the property placed therein by the Natatorium Company, did not change the character of the ownership.

It is argued by the respondent that the surrender of the leased premises to the appellant was in substance a preference of the appellant as creditor, but we think this argument is without force, because the property surrendered by the Natatorium Company was, in fact and in law, at that time the property of the appellant. The only right which the Natatorium Company had to this property was a leasehold right to use the property, subject to the payment of its rent. When the leasehold was forfeited the possession simply reverted to the lessor, which cannot be said to be in any way a

preference. Nor was it necessary that the lease should be recorded so far as creditors were concerned. The title to the property was of record and stood in the name of the appellant, and persons doing business with the Natatorium Company must, of course, take notice of that fact. Neither was the agreement of August 25, 1916, a chattel mortgage, and it was not necessary to be recorded as such. As we have above intimated, the real property, together with the building and the equipment placed therein under the original lease, was at all times the property of the appellant. The equipment never became the property of the Natatorium Company after it was placed in the building subject to the lease. Like the $50,000 cash, which no doubt also went into the building, it became a part of the building by the terms of the lease. We are clearly of the opinion that the trial court erred in concluding that the property sought here, except that which was conceded upon the trial to be the property of the Natatorium Company, was the property of that company to which the trustee in bankruptcy was entitled.

The judgment of the trial court is therefore reversed, and the cause remanded with direction to the lower court to enter a judgment for the appellant in accordance with this opinion, the appellant to recover costs.

ELLIS, C. J., HOLCOMB, and CHADWICK, JJ., concur.