[No. 14715. Department One. July 10, 1918.]

D. O. PRATT, *Receiver etc., Respondent*, v.
SCANDINAVIAN-AMERICAN BANK OF
SEATTLE *et al., Appellants.*[1]

SALES — CONDITIONAL SALES—AFTER-ACQUIRED PROPERTY—TITLE—SUBSEQUENT CREDITORS. A clause in a duly recorded conditional sales contract providing that after-acquired property of the vendee shall be added and become the property of the vendor subject to the sales contract, does not, as against subsequent creditors of the vendee, pass the title to property subsequently acquired by the vendee under another conditional sales contract, notwithstanding the last vendor lost the property by failing to record its bill of sale; since the title thereto never passed to the vendee, as against the last vendor or subsequent creditors, and the first vendor was neither a subsequent purchaser, incumbrancer or creditor, within Rem. Code, § 3670.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 11, 1917, upon findings in favor of the plaintiff, in an action in replevin, tried to the court. Affirmed.

[1]Reported in 174 Pac. 462.

*Ballinger, Battle, Hulbert & Shorts,* for appellants.
*Baxter & Jones,* for respondent.

MITCHELL, J.—In this cause there is no dispute as to the facts, which are substantially as follows:    In July, 1916, J. F. Lane, as trustee of the Scandinavian-American Bank, entered into a conditional sale contract with A. R. Badgley, whereby he agreed to sell to Badgley, who agreed to buy, a sawmill and logging outfit.    The purchase price, bearing interest at six per cent per annum, was to be paid monthly at the rate of $1 per M on all lumber cut, monthly payments to be not less than $208.33.    The contract covered real estate and all the personal property making up the sawmill and logging outfit.    It provides that the title to all the property shall remain in Lane, trustee, until the purchase price is fully paid, and in the event of failure to make payments as agreed, Lane, as trustee, may retake possession of the plant and property and terminate and discharge the contract.    It has this further provision, viz.:

"Any additions by way of machinery, equipment, or of any kind or character, to the said property or plant made by second party during the term of this agreement shall become and be the property of first party, subject to the terms of this agreement.

"Title to all of the property hereinafter described, together with any and all additions or improvements to said mill plant or property, shall be and remain in first party until full and complete payment of the purchase price herein named."

Badgley executed the contract only for, and on behalf of, the B. H. M. Lumber Company, then being organized to take over the contract and all the plant and property.    Shortly, the lumber company took possession of all the property and operated it until November 10, 1916, when the lumber company failed.    The

conditional sale contract was duly filed for record, as required by law, within ten days after the vendee took possession of the property. While the lumber company was operating, it added to the mill outfit the personal property described in the complaint and involved in this suit. The lumber company failed to make payments as contracted, and on November 10, 1916, Lane, as trustee, retook possession of the plant and property, including that added by the lumber company, claiming such right under the terms of the Lane-Badgley contract. Respondent, Pratt, was appointed receiver of the lumber company on November 26, 1916. All the property in dispute which was added to that sold by Lane, as trustee, was purchased by the lumber company from the Contractor's Machinery & Storage Company, of Seattle, under conditional sale contracts, in August, 1916, which contracts were not filed of record as required by statute, and such vendors do not now claim any right or title to the property nor any interest in this suit. The property in dispute consists of a planer, a blower and other attachments which were never affixed to, or set up at, the mill, and a locomotive and logging trucks which were used somewhat by the lumber company in moving logs to the mill. There have been filed with the respondent, as receiver of the lumber company, allowed creditors' claims in the sum of $6,000, all of which were incurred subsequent to the purchase by, and delivery to, the lumber company of the property in suit. The only property now in the hands of the receiver is cash $15, and other personal property of about $50 in value. The value of the property in suit is $1,750. The receiver's action, in claim and delivery, resulted favorably. A new trial was denied, and Lane, as trustee, and others appeal.

The real question in the case is: Does the after-acquired title clause in the Lane-Badgley contract en-

title appellants to the property delivered to the lumber company by the Contractor's Machinery & Storage Company, awarded to respondent by the judgment? Appellants assert the affirmative.

Appellants' dominant idea seems to be that, because, as they say, the Lane-Badgley contract as to after-acquired property is binding upon the parties thereto, therefore it is binding on respondent as the representative of the creditors of the lumber company; and that the moment the lumber company purchased and received possession of the property in dispute, thus adding it to the mill plant or logging outfit, instanter and by virtue thereof the rights of appellant Lane attached to it, he becoming the owner of it, and upon the termination of the contract for failure of the lumber company to comply with its terms, and by Lane's taking possession of the property before the appointment of the receiver, that then both title and possession of the property became transferred to Lane under the positive agreement between the parties. Supplementing such contention, it is further insisted by appellants that the disputed property became that of Lane, as trustee, as fast as it was added to the plant, and especially so after Lane took possession of it for failure of respondent to comply with the terms of the original contract; and that it makes no difference whether this right was acquired by reason of a preexisting debt or not, for, under the decisions of this court, a purchaser or incumbrancer in consideration of a preexisting debt is protected by statute.

Before noticing appellants' authorities, it is advisable to bear in mind the statute involved, which is Rem. Code, § 3670, as follows:

"That all conditional sales of personal property, . . . containing a conditional right to purchase, where the property is placed in the possession of the

vendee, shall be absolute to all *bona fide* purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within ten days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions, and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides.''

Counsel for appellants treat the two propositions as so strongly allied that the cases relied on are cited without specific devotion to either proposition—a plan with which no fault is seen. The first case cited is *Lundberg. v. Kitsap County Bank*, 79 Wash. 75, 139 Pac. 769, involving a contract providing that, if a dry kiln is built, it also shall be forfeited, with reference to which the court said:

''The plain intention is that the dry kiln and the rest of the property are to be classed together and all surrendered to the vendor, if the conditions of payment are not complied with.''

The controversy in the case was between parties all of whose rights were controlled by contract.

The next case is *Johnston v. Wood*, 19 Wash. 441, 53 Pac. 707. Johnston, by a conditional sale contract, never recorded, sold and delivered a piano to one Likens, who in turn sold and delivered it to Wood, a purchaser in good faith, in settlement of a board bill, and the court, construing the statute, held that the term ''all creditors, or purchasers in good faith'' applies without restriction to all purchasers without notice, and protects one who cancels a preexisting debt for the property.

Next, in *Worley v. Metropolitan Motor Car Co.*, 72 Wash. 243, 130 Pac. 107, the question was: Is a chattel mortgage, duly recorded, subsequent in time, en-

titled to priority over an unrecorded conditional sale?
The court held it was, although the mortgagee fur-
nished the money some appreciable time before the
auto was purchased.

The next two cases, *Blanchard v. Cooke*, 144 Mass.
207, 11 N. E. 83, and *Bennett v. Bailey*, 150 Mass. 257,
22 N. E. 916, are explained by a quotation from the
latter, as follows:

"It was settled in *Blanchard v. Cooke*, 144 Mass.
207, after a careful review and a full consideration of
the authorities, that possession of after-acquired per-
sonal property, rightfully taken and maintained by a
mortgagee, under a mortgage purporting to cover it,
gives him a title good not only against the mortgagor,
but even against an assignee in insolvency or an at-
taching creditor."

In each of these cases the parties to the contract
were the only ones in court, and there is no question
involved as to the after-acquired property having been
obtained by a conditional sale contract.

In the case of *Harding v. Lewenberg*, 174 Mass. 394,
54 N. E. 870, the court only decides that the grantee
under a conditional sale contract of a stock of mer-
chandise could not, in case of a breach of the contract,
take after-acquired property because there was no pro-
vision in the contract giving such right.

In the case of *Hills v. Stimson Co.*, 102 Wash. 1,
172 Pac. 1181, the defendant was to erect a build-
ing at a certain cost and let it at a stated rental to
the Natatorium Company, with the further understand-
ing that the Natatorium Company, at its own expense,
should furnish and install certain equipment, machin-
ery and fixtures which should become a part of the
building. They were placed in the building, and after-
wards, on failure of the Natatorium Company and pos-
session taken by defendant, the plaintiff, as trustee in

bankruptcy of the Natatorium Company, contended that, as the Natatorium Company had never paid the purchase price for the articles attached and affixed to the building by it, the defendant was not entitled to them as against the open creditors represented by the trustee. True, the court held with the defendant, construing only the contract between the defendant and the Natatorium Company, there being no conditional sale contract involved in the case.

Lastly, there is the case of *Keyes v. Sabin,* 101 Wash. 618, 172 Pac. 835. In this case, on March 4, 1915, Williams & Company, merchants, being indebted to certain creditors who were pressing for payment, executed to Keyes, as trustee for the use of those certain creditors, promissory notes, and attempted to secure them by a chattel mortgage on the stock of goods. The mortgage was not recorded until March 27, 1915. In the meantime, March 20, 1915, Williams & Company made a common law assignment of their property, including the stock of goods, to Sabin for the benefit of creditors. Sabin immediately took possession of the stock of goods. The assignee had no notice of the mortgage when he took possession, nor was it shown that any of the creditors of Williams & Company, other than the beneficiaries of the mortgage, had notice. The mortgagee presented to the assignee, and unsuccessfully prosecuted, his claim as preferred. The court held the mortgage void as to general creditors. There is no question of conditional sale contract in the case.

If we keep in mind what we are about, it will be seen that appellants are afield. This is not a controversy between the parties to the Lane-Badgley contract, but one between Lane, as trustee, and the creditors of the other party to that contract, now represented by the receiver, and between whom there is no contractual re-

lation.   Appellants base their rights upon a contract made while there existed a statute the protection of which is invoked by the other parties to the action.

The essential and original error of appellants is they assume the very thing in dispute, namely, that, because of the after-acquired title clause in their contract, the subsequent acquisition by the lumber company of the property in dispute, and the breach of the contract for failure to make payments, therefore the *title* to the disputed property becomes vested in or transferred to appellants.   We speak lightly when we say the lumber company purchased the property from the Contractor's Machinery & Storage Company, if by that is meant that the title passed.   It would be inconsistent with the very meaning of *conditional* sale, which reserves title in the vendor until the agreed purchase price is paid; and, as aptly contended by respondent, the lumber company never acquired *title*, either by reason of the vendor's failure to file the conditional sale contracts or otherwise, and that, as between the vendor and vendee, the contract remained enforceable, and the vendor lost the property only because of the statute making the sale absolute as to the creditors.   The question here is no longer an open one in this state.   In the case of *Peterson v. Chess,* 92 Wash. 682, 159 Pac. 894, we said:

"We have consistently held that one who takes property under a conditional bill of sale is not an owner and has no element of title; that title passes only upon full performance of the conditions precedent to which he has subscribed.   *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71; *Duarte v. Minnick,* 85 Wash. 539, 148 Pac. 600."

The general rule as to the rights of a mortgagee, with reference to after-acquired property and the limi-

tations of the rule, finds clear exposition in the case of *Harris v. Youngstown Bridge Co.,* 90 Fed. 322, where the court says:

"It is well settled, since the decision of the supreme court of the United States in *Pennock v. Coe,* 23 How. 117, that one may execute a mortgage, valid at least in equity, upon property not in existence or not owned by him, the lien of which will immediately attach to the property when it shall come into existence, or become the property of the mortgagor; and this whether the title of the mortgagor is legal or equitable. The rule has been applied both to real and to personal property. [Citing authorities.] *The limitations of the rule are clearly drawn in the foregoing cases. The chief is that the mortgagee of after-acquired property is not a purchaser for value, and cannot acquire an interest by way of lien greater than that which the mortgagor has himself acquired.* The lien of the mortgage attaches to after-acquired property in the condition in which the mortgagor takes it from his vendor, and subject to all known liens and equities valid against the vendor, and also subject to all liens or equities valid against the vendee and mortgagor which arise in the act of purchase or acquisition, and therefore necessarily qualify its scope and extent. . . . In cases of conditional sales to the mortgagor, the mortgagee, under the after-acquired property clause, obtains a lien subject to the same defeasance or forfeiture as that to which the title of his mortgagor is subject. *Fosdick v. Schall,* 99 U. S. 235, 251; *Myer v. Car Co.,* 102, U. S. 1; *Trust Co. v. Groome,* 2 U. S. App. 95, 105, 1 C. C. A. 133, 48 Fed. 868; *Loomis v. Railroad Co.,* 17 Fed. 301, 305."

Appellants, under the after-acquired title clause of the Lane-Badgley contract, are situated in relation to the property in question just as the mortgagee in the case last mentioned was to the property involved therein. Appellants have no rights under the statute to the disputed property. They are neither purchasers nor incumbrancers, because the lumber company had no

title to the property such as is necessary to support a sale or incumbrance, it being at all times, so far as appellants and the lumber company are concerned, the property of the vendor under the conditional sale contract, and, of course, there is no contention that appellants are subsequent creditors.

There is no claim on the part of appellants, as we understand, that their taking possession of the property, *per se,* gives them any rights to it.

Judgment affirmed.

MAIN, C. J., PARKER, FULLERTON, and TOLMAN, JJ., concur.