LEON M. PISCULLI,

*vs.:*

BELLANCA AIRCRAFT CORPORATION, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, BELLANCA AIRCRAFT CORPORATION OF AMERICA, a corporation duly organized and existing under and by virtue of the laws of the State of New York, NORTH OCEANIC AIRWAYS CORPORATION, a corporation duly organized and existing under and by virtue of the laws of the State of NEW York, CESARE SABELLI and DELAWARE FLYING SERVICE INC., a corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

*New Castle, Dec. 6, 1929.*

*James R. Morford,* of the firm of Marvel, Morford & Ward and *William T. Lynan, Jr.,* for complainant.

*Robert H. Richards* and *Aaron Finger,* for the defendants Bellanca Aircraft Corporation, a corporation of the State of

Delaware, and Bellanca Aircraft Corporation of America, a corporation of the State of New York.

THE CHANCELLOR. Assuming the conditional sales agreement of May 22nd to be a valid one (which the complainant questions), yet, the complainant contends, it must be treated as subordinate to his claim. This contention is based on two alternative views. The first is that his chattel mortgage was a valid one and lawfully recorded under the laws of New York, and that it therefore takes precedence, being prior in point of time, over the subsequent conditional sales agreement, the vendor in which is chargeable with notice of a legal lien by virtue of the mortgage's recordation. But if this be not so, it is secondly contended that the Bellanca Company, the seller in the conditional sales agreement, had actual notice at the time of the execution of the conditional sales contract of Sabelli's agreement to pledge the plane as security for the complainant's investment, and that therefore the rights of the Bellanca Company under the conditional sales contract are subordinate to an equitable lien in favor of the complainant.

If the logic of the complainant's first alternative position is sound, he must first establish the proposition that on May 16th, when the chattel mortgage was given, Sabelli had such property in the plane as was capable of being mortgaged. At the time the mortgage was executed the plane had not been delivered. It was in the possession of the manufacturer. It was however completed and so far as the manufacturer was concerned ready for delivery. The letter of May 14th clearly demonstrates that fact. Not only so, the manufacturer had prior to the writing of this letter, viz., on April 9th, secured from the Department of Commerce a license number for what it described to Sabelli as "your plane." There can then be no doubt but that not later than May 14th, the plane had been completed under the contract and was ready for delivery.

Notwithstanding the possession remained in the Bellanca Company and that a balance remained overdue and unpaid, the complainant contends that property in the plane passed to Sabelli on not later than said date of May 14th, so that he owned

something upon which he was capable of attaching the lien of a mortgage on May 16th.

The contract under which the plane was manufactured was to be construed according to the laws of New York. It was so stipulated. There was no term in the contract prohibiting Sabelli from transferring title to the plane, though there was one prohibiting him from assigning the contract. He being then at liberty to transfer the title as soon as it was devolved upon him, it is next in order to inquire whether or not, when he undertook to transfer the title by way of mortgage, it had under the law of New York been vested in him.

The appropriate statutory provisions of the New York law are in evidence. They are embodied in *Section* 100 of the *Personal Property Law of that State (Consol. Laws, c.* 41). That section defines certain rules "for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer." *Rule* 4 appears to be the rule applicable to this case. That rule is as follows:

"Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

The letters written by the manufacturer to Sabelli in which reference was made to "your plane," the securing by the manufacturer of a license number for the plane on the application of Sabelli, and particularly the letter of May 14th in which the manufacturer specifically stated that the plane was ready for delivery under the contract and attaching a bill for the amount due to date, constitute, it is argued, an unconditional appropriation of the particular plane to the contract, and thus by virtue of *Section* 100 of the *New York Personal Property Law* the title passed to Sabelli prior to the execution by him of his mortgage to the complainant. The facts just referred to undoubtedly serve to show that the plane in question was identified with the one contemplated by the contract. This is far, however, from saying

that prior to May 16th, it was in fact unconditionally appropriated to it. Such appropriation can arise only by the mutual consent of the parties. The statute seems clear in that respect. I do not see how under the evidence it can be said that either the buyer or the seller ever consented prior to May 16th to the unconditional appropriation of the plane to the contract so as to effect a transfer of the title from the seller to the purchaser. I say this for these reasons. First, looking at the matter from the side of the buyer, it is hardly to be supposed that he ever assented to the casting of the title upon him until he had first tested the plane in order to ascertain its ability to meet the requirements of the specifications. The contract contemplated such tests. They were in fact made by the buyer on May 22nd, and on that day he signed a statement that the tests were satisfactory. Thus as late as May 22nd, the buyer recognized that he was under no obligation to take the property. Under such circumstances, I do not see how he can be said to have assented, prior to that date, to an unconditional appropriation by the seller of the plane to the contract so as to pass title to him. But, secondly, looking at the matter from the side of the selling manufacturer, I can discover no evidence that it ever intended prior to May 16th to assent to an unconditional appropriation of the plane to the contract so as to lose the property therein. This is for the reason that on that date something over ten thousand dollars was past due and unpaid on the purchase price. The buyer was in default in his payments to that extent. The Bellanca Company never waived its right to be paid the contract installments before surrendering its property. Indeed so insistent was it upon payment before surrendering the plane on May 22nd, that it not only demanded the sums specified to be paid in installments, but it went so far as to refuse to pass the title until the deferred credit of $1,900.00 was duly taken up. Not only so, but prior to that date it had refused to pass an unconditional title upon payment of the full past due balance. Under these circumstances it is difficult to see how the Bellanca Company, even if the buyer had indicated an unconditional appropriation of the plane to the contract, can be said to have assented thereto. The act of the Bellanca Company in applying for a license number in the

buyer's name can, in the light of the subsequent events, mean nothing more than this, namely, that both it and Sabelli were forestalling time by arranging in advance for details which would be essential for Sabelli, when he acquired the plane, to attend to prior to his projected flight, a flight which it was thought brooked no delays. The letters also, in which the Bellanca Company referred to "your plane" cannot, in view of subsequent events, indicate an assent to an unconditional appropriation of the plane to the contract so as to pass title. The expression referred to is more properly reconcilable to a mere convenience of expression rather than to an appropriation of the plane to the contract.

I conclude, therefore, that neither the seller nor the buyer with the assent of the other had on May 16th, or prior thereto, unconditionally appropriated the plane to the contract so as to effect a transfer of title under the *New York Personal Property Law;* and that therefore when Sabelli gave the complainant a chattel mortgage on that date he had no title to the plane. The mortgage was therefore of no validity as a lien. *Titusville Iron Co. v. City of New York*, 207 *N. Y.* 203, 100 *N. E.* 806; Mr. Justice Nelson in *Pennock, et al., v. Coe, et al.*, 23 *How.* 117, 128, 16 *L. Ed.* 436, quoted with approval the maxim that a person cannot grant a thing which he has not, and observed that "many authorities are referred to at law to prove the proposition, and many more might have been added from cases in equity, for equity no more than law can deny it. The thing itself is an impossibility. It may, at once, therefore, be admitted, whenever a party undertakes, by deed or mortgage, to grant property, real or personal, *in presenti*, which does not belong to him or has no existence, the deed or mortgage, as the case may be, is inoperative and void, and this either in a court of law or equity."

Having concluded that the mortgage has no status as a legal lien antedating the conditional sales agreement, it becomes unnecessary to enter upon a consideration of whether it was properly recorded, a question which was argued at some length.

The complainant's case is not ended by a finding that his claimed legal lien is non-existent, for the reason that he makes the alternative contention referred to at an earlier point in this opinion, viz., that in any event the complainant had an equitable

lien of which the Bellanca Company had notice at the time the conditional sales agreement was entered into, and that the Bellanca Company's rights under the conditional sales agreement are therefore subject to that lien.

In response to this contention the defendant first urges that there can be no equitable lien unless the property upon which the lien is said to exist is in the possession of the debtor, and that inasmuch as Sabelli had neither the title nor possession when the equitable lien is claimed to have been created by him, it must follow that the lien cannot have arisen. In support of this proposition the authority of Pomeroy amongst others is cited. A quotation is taken from *Section* 1233 of the Third Volume of the Fourth Edition of *Pomeroy's* work on *Equity Jurisprudence* to which the defendant points as authority. That quotation is as follows:

"It is of the very essence of this condition that while the lien (equitable) continues the possession of the thing remain with the debtor or the person who holds the proprietary interest subject to the incumbrance."

I do not understand the author by that language to mean to say that it is impossible to create an equitable lien upon property not yet in existence and not therefore either in the ownership or possession of the lienor. Indeed he expressly states the contrary in the following paragraphs.

"*Section* 1235. The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property. The ultimate grounds and motives of this doctrine are explained in the preceding section; but the doctrine itself is clearly an application of the maxim, equity regards as done that which ought to be done. In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of

identification, is to be held, given, or transferred as security for the obligation."

Giving to this language a more particular application, the author proceeds in *Section* 1236 to state the doctrine in a way that more specifically approaches this case. His language is:

"The doctrine is carried still further, and applied to property not yet in being at the time when the contract is made. It is well settled that an agreement to charge, or to assign, or to give security upon, or to affect property not yet in existence, or in the ownership of the party making the contract, or property to be acquired by him in the future, although, with the exception of one particular species of things, it creates no legal estate or interest in the things when they afterwards come into existence or are acquired by the promisor, does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract."

Accepting the foregoing as sound in principle, the result is that lack of possession in Sabelli on May 16th when the complainant advanced money on the strength of the plane as security, is in itself no sufficient reason why the complainant should be deprived of whatever rights he, as an equitable lienor, was entitled to enjoy.

The complainant's right as against Sabelli was to be repaid the thirteen thousand dollars he had advanced in case the plane failed to proceed so far as five hundred miles on its contemplated journey, and to look to the plane as security for the repayment. It is true that the lien agreement evidenced by the mortgage of May 16th does not specifically and in terms provide that a loan of thirteen thousand dollars was being made with a lien on the plane as security for its repayment. But it is impossible for me to read the record without concluding that in event of the flight's failure short of five hundred miles from shore, the money advanced was to be repaid by Sabelli to the complainant and the plane was to remain subject to a lien as security. I shall not pause to give my reasons for this view. Indeed I do not understand the solicitor for the defendant to make any serious contention against it.

The flight failed short of the five hundred mile distance, and the complainant thereupon became entitled to be repaid the thirteen thousand dollars invested by him in the enterprise.

The question which the case presents is not whether Sabelli

owes this sum to the complainant. That is not controverted. Neither is the question one as to the relative rights of the complainant and Sabelli with respect to the plane. The contest is between the complainant and the manufacturer, and the question between them is as to whether or not the complainant's demand for the thirteen thousand dollars owed to him by Sabelli can be made good out of the plane which the manufacturer claims to own.

Notwithstanding it may be said that the complainant's mortgage lien was invalid at law, it is insisted that it was good as an equitable lien of which the Bellanca Company had notice and that the Bellanca Company's rights as conditional vendor are accordingly subordinate thereto.

The question thus is one that presents a rivalry of claims between one who asserts a prior equitable lien placed on property to be acquired by the lienor and one who is the lienor's subsequent conditional vendor of the property.

On this branch of the case it is contended by the complainant that the contract of conditional sale is void because not recorded in accordance with the New York statute. The statute referred to is known as the *Uniform Conditional Sales Law of the State of New York (Consol. Laws, c. 41, Article 4)*. *Section* 64 of that act provides that every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer shall be valid as to all persons, "except as hereinafter otherwise provided." It is "hereinafter otherwise provided" as follows:

"*Section* 65. Conditional sales void as to certain persons. Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided. * * * "

In the next *Section* (66) it is provided that the place of filing shall be "in the office of the city or town clerk in the city or town in which the purchaser resides, if he resides within the state at the time of the execution thereof," etc. The proof is that the place of Sabelli's residence was the Garden City Hotel, Garden

City, Nassau County, New York. The conditional sales contract was filed on the day after its execution in the city and county of New York. Sabelli described himself in the conditional sales contract as "of 285 Madison Avenue, Borough of Manhattan, City of New York." This was his office address. Thus the recital of residence in the contract is contrary to the true fact of residence.

If the filing was not in the place indicated by the statute, the reservation of title was to the extent of the statute's provision void. *Ament v. Zaharion*, 206 *App. Div.* 143, 200 *N. Y. S.* 595. Where the recital of the purchaser's residence found in the contract is at variance with his actual place of residence, which of the two places is to be accepted as the place meant by the statute? No New York case dealing with conditional sales contracts has been cited on this question. Cases dealing with the recordation of chattel mortgages have been cited which appear to me to be decisive of the question. Those cases hold that where the statute requires the filing to be "in the town or city where the mortgagor, if a resident of the state, resides at the time of the execution thereof," etc.; the place of actual residence controls over that of the mortgage's recital of residence. *Baumann v. Libetta*, 3 *Misc. Rep.* 518, 23 *N. Y. S.* 1; *Platt v. Stewart, Fed. Cas. No.* 11,220, 13 *Blatchf.* 481; *Id.*, 101 *U. S.* 737, 25 *L. Ed.* 816.

On the authority of these cases I conclude that, notwithstanding the conditional sales contract was recorded in the county where the purchaser is therein stated to reside, the instrument was improperly filed in that county because in point of fact the purchaser's residence was elsewhere.

The result is then that the contract of conditional sale was void because of improper filing. But it was not void in *toto*. The statute of New York does not purport to attach complete avoidance to such a contract simply because of an omission to file it as directed. *Section* 64 of the act declares the general rule to be that reservations of title shall be valid. It is only in favor of a restricted class of persons that the general rule is non-operative. These persons are (*Section* 65) any purchaser from or creditor "of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them."

Now, can the complainant be said to be included in any of

these classes? Certainly he is not a creditor having a lien either by levy or attachment. If he is in the protected classes, it must then be because he is a purchaser of the goods from the conditional vendee without notice of the Bellanca Company's reservation of title. A purchaser within the meaning of the act is not only one who buys the goods, but according to the express terms of the act (*Section* 61), includes a mortgagee. We have seen though that the complainant's so-called mortgage is not a legal instrument for the reason that no mortgageable title was in the mortgagor when it was given. Nor has any such legal mortgageable title been conferred on Sabelli since that date. The same reasons heretofore given for holding the mortgage void as a legal lien ante-dating the conditional sales agreement, likewise support the view that as a legal lien it has had no existence since that time.

The complainant at no time being the holder of a legal mortgage cannot qualify as a legal "mortgagee" and bring himself within the saving clause of the statute. Was he an equitable mortgagee? I think not, for the reason that his supposed mortgagor neither had the title at the time the agreement between them was entered into nor did he ever subsequently acquire it. "Whenever," says the author of *Jones on Liens* (*Volume* 1, § 42, *3rd Ed.*), "a positive lien or charge is intended to be created upon real or personal property not in existence, or not owned by the person who grants the lien, the contract attaches in equity as a lien or charge upon the particular property as soon as he acquires title and possession of the same." It would seem to be an indispensable pre-requisite of all voluntary liens in equity as well as at law, that the party assuming to create them should acquire some sort of title to the property before the lien can attach thereto. The complainant, therefore, for want of title in Sabelli cannot be said to be an equitable lienor. This conclusion renders it unnecessary to consider whether an equitable mortgagee is within the meaning of the term "mortgagee" as it is used in the saving clause of the *New York Conditional Sales Act*.

We have then a case where the parties contestant in this suit are at large so to speak in the field of general principles, neither having the advantage of special statutory provisions dealing with chattel mortgages and conditional sales in their

favor, except the one provision that a reservation of title in a seller of goods is recognized by the statutory law of New York as permissible.

By the law of New York, there being no statute to interfere, a reservation of title by a conditional vendor is good even against a purchaser for value without notice. It was so held in the following cases which arose before the adoption in New York of the *Uniform Conditional Sales Act. Ballard v. Burgett*, 40 *N. Y.* 314; *Brewster v. Baker*, 20 *Barb. (N. Y.)* 364; *Kenny v. Planer*, 3 *Daly (N. Y.)* 131; *Walker v. Mitchell*, 25 *Hun (N. Y.)* 527; *Puffer v. Reeve*, 35 *Hun (N. Y.)* 480; *Austin v. Dye*, 46 *N. Y.* 500.

Had therefore the complainant been the outright purchaser for value of the plane, he would (there being no statute to protect him) under the foregoing authorities have had no superiority of right over the Bellanca Company, the conditional vendor, notwithstanding the element of good faith and the absence of notice.

It is difficult to see how in his present status (there being no statute to protect him) he can have any better right than he would have had as a purchaser for value. In the following cases one who takes a chattel mortgage of goods to be thereafter acquired by the mortgagor is held to be inferior in right to the conditional seller of the after-acquired goods who reserves title in himself until the goods are paid for. *Tilford v. Atlantic Match Co., (C. C.)* 134 *F.* 924; *U. S. Fidelity, etc., Co. v. G. W. Parsons Co., (C. C. A.)* 235 *F.* 114; *Gill v. Kahn-Holt Co.*, 47 *App. D. C.* 53; *Pratt v. Scandanavian-American Bank*, 103 *Wash.* 134, 174 *P.* 462. In *Harris v. Youngstown Bridge Co., (C. C. A.)* 90 *F.* 322, 328, Circuit Judge Taft expressed the legal principles bearing on this question as follows:

"It is well settled, since the decision of the Supreme Court of the United States in *Pennock v. Coe*, 23 *How.* 117 [16 *L. Ed.* 436], that one may execute a mortgage, valid at least in equity, upon property not in existence or not owned by him, the lien of which will immediately attach to the property when it shall come into existence, or become the property of the mortgagor; and this whether the title of the mortgagor is legal or equitable. The rule has been applied both to real and to personal property. *Dunham v. Railway Co.*, 1 *Wall.* 254, 266 [17 *L. Ed.* 584]; *Railroad Co. v. Cowdrey*, 11 *Wall.* 459, 481 [20 *L. Ed.* 199]; *U. S. v. New Orleans R. R.*, 12 *Wall.* 362 [20 *L. Ed.* 434];

*Dilton v. Barnard*, 21 *Wall.* 430, 440 [22 *L. Ed.* 673]; *Fosdick v. Schall*, 99 *U. S.* 235, 251 [25 *L. Ed.* 339]; *Myer v. Car Co.*, 102 *U. S.* 1 [26 *L. Ed.* 59]; *Porter v. Steel Co.*, 122 *U. S.* 267, 283, 7 *S. Ct.* 1206 [30 *L. Ed.* 1210]; *Thompson v. Railroad Co.*, 132 *U. S.* 68, 74, 10 *S. Ct.* 29 [33 *L. Ed.* 256]; *Railroad Co. v. Hamilton*, 134 *U. S.* 296, 10 *S. Ct.* 546 [33 *L. Ed.* 905]; *Trust Co. v. Kneeland*, 138 *U. S.* 414, 423, 11 *S. Ct.* 357 [34 *L. Ed.* 1014]; *McGourkey v. Railway Co.*, 146 *U. S.* 536, 567, 13 *S. Ct.* 170 [36 *L. Ed.* 1079]; *Wade v. Railroad Co.*, 149 *U. S.* 327, 341, 13 *S. Ct.* 892 [37 *L. Ed.* 755]; *Irrigation Co. v. Garland*, 164 *U. S.* 1, 17 *S. Ct.* 7 [41 *L. Ed.* 327]. The limitations of the rule are clearly drawn in the foregoing cases. The chief is that the mortgagee of after-acquired property is not a purchaser for value, and cannot acquire an interest by way of lien greater than that which the mortgagor has himself acquired. The lien of the mortgage attaches to after-acquired property in the condition in which the mortgagor takes it from his vendor, and subject to all known liens and equities valid against the vendor, and also subject to all liens or equities valid against the vendee and mortgagor which arise in the act of purchase or acquisition, and therefore necessarily qualify its scope and extent. Thus, a vendor's lien on the property, good against the mortgagor, is prior in right to that of the mortgagee under an after-acquired property clause. So, too, a purchase-money mortgage upon after-acquired property is not displaced by the lien of a prior mortgage of the mortgagor containing an after-acquired property clause, because in equity the purchaser is regarded as taking only the difference between the value of the property and the amount still due on the price. *U. S. v. New Orleans R. R.*, 12 *Wall.* 362 [20 *L. Ed.* 434]. In cases of conditional sales to the mortgagor, the mortgagee, under the after-acquired property clause, obtains a lien subject to the same defeasance or forfeiture as that to which the title of his mortgagor is subject. *Fosdick v. Schall*, 99 *U. S.* 235, 251 [25 *L. Ed.* 339]; *Myer v. Car Co.*, 102 *U. S.* 1 [26 *L. Ed.* 59]; *Trust Co. v. Groome*, 2 *U. S. App.* 95, 105, 1 *C. C. A.* 133, 48 *F.* 868; *Loomis v. Railroad Co.*, [*C. C.*] 17 *F.* 301, 305."

The complainant argues further on the theory that the Bellanca Company had no right to exact the conditional sales agreement from Sabelli, that it was bound to convey the property in the plane to Sabelli without conditions, because the original contract with Sabelli entitled him to receive the plane upon paying all the purchase price less nineteen hundred dollars for which an extension of credit was to be allowed; and that inasmuch as the entire sum less nineteen hundred dollars was paid, the Bellanca Company must be regarded in law as having surrendered the unconditional title to Sabelli.

That argument overlooks the fact that the Bellanca Company and Sabelli were at liberty to alter their contract. I know of no

principle by which it would be permissible to hold that both of the parties to the contract were bound to go forward with it as written in order that a stranger to it might find a title upon which to fasten a lien. What duty did the Bellanca Company owe to the complainant not to secure a variation in its contract with Sabelli whereby title to the plane should be withheld from him? Suppose on May 22nd the Bellanca Company, Sabelli being in default as he was, had sold the plane to someone else— in that case, would the complainant have any right, even though the purchaser knew all the facts, to establish a lien upon it? The question seems to me to supply its own negative answer, because certainly no title would have passed to Sabelli, the alleged lienor. What actually took place was not a sale by the Bellanca Company to a stranger as in the supposed case, but a conditional sale to the same Sabelli on a new contract, with reservation of title. In the actual case as in the supposed one, title never passed from the seller. All Sabelli acquired was possession, a thing quite distinct from title. If Sabelli had paid over to the Bellanca Company the full purchase price less the nineteen hundred dollars and had kept all of his other engagements, and had refused to agree to the conditional sales arrangement, there might be some room to contend that under the *New York Personal Property Law* the title had passed to him notwithstanding possession was withheld. But that was not the case. He voluntarily refrained from acquiring the property and agreed that title thereto should not be in him until certain specified conditions had been met. Thus, he never acquired the title. It was not his intent to receive it; nor was it ever the intent of the seller to convey it until certain after events, which never occurred, should arise. The Bellanca Company had the right in view of Sabelli's demonstrated tardiness in meeting his financial obligations and in view of the controversy it was having with him over the identity of the pilot, as to whom its approval was to be had, to negotiate a new arrangement with Sabelli and if Sabelli was satisfied I do not see on what ground the complainant can complain against the Bellanca Company, though he may have ample ground for grievance against Sabelli for failing to acquire the property upon which the complainant's security was to rest.

I do not overlook the contention that Sabelli claims to have never knowingly signed the conditional sales contract, that he thought it was something else to which he affixed his signature. The evidence, however, does not convince me that his claim in this regard is to be accepted.

The conclusion then is that title to this piece of property was never at any time in Sabelli, and that no lien undertaken to be created by him ever attached to it. The complainant trusted Sabelli to secure a lienable title. His failure to acquire such title is the complainant's misfortune. He must look to Sabelli for his relief. The plane appears to me to be beyond his reach.

The bill will be dismissed, costs on the complainant.

NOTE. After filing the foregoing opinion leave was granted, on motion, to argue a point not raised or debated, and the opinion upon further argument appears *post p*. 151.