A contest having arisen between complainants, as mortgagees, and L. Barth Company, as conditional vendor, concerning their respective rights and priorities in and to certain furniture and furnishings which were conditionally sold by the latter to the mortgagor, an order was entered whereby said issue was referred to a master of this court for his report and finding. Upon the coming in of the master's report and findings that the rights and lien of the mortgagees is paramount and superior to that of the conditional vendor in and to the furniture and furnishings in question, the latter duly filed its exceptions thereto, by reason of which the matter is now before me.
It appears that the conditional sales contract is dated June 2d 1928, but was not filed until October 5th, 1928, while the furniture and furnishings therein specified were delivered to the mortgagor, Cosmopolitan Club, during the period commencing on June 27th, 1928, and ending on July 13th, 1928.
The mortgage, however, bears date of August 15th, 1927, was recorded both as a real property and chattel mortgage on November 25th, 1927, and was given to complainants by said Cosmopolitan Club in order to secure the payment of a $200,000 gold note issue, the proceeds of which were to be used to finance the construction, furnishing and equipment of the latter's club house, then in the course of construction.
With respect to the kind and character of the personal property therein embraced, the mortgage, amongst others, contained the following provisions:
"Together with any and all * * * and all furniture and furnishings, screens, curtains, awnings, window shades and all fittings and fixtures of every kind now or hereafter in and about, or that shall be placed in any building, now or to be hereafter erected on said property, or any part thereof, including all fixtures and articles attached or to be attached to or used or to be used in the operation of said building * * *."
"Article 2. Section 4. Said party of the first part covenants that it will, on or before the 15th day of April, 1928, purchase for, procure, install and place in said completed club building all such *Page 279 
furniture, furnishings and fixtures as may be reasonably appropriate in quality and sufficient in quantity to fully equip said building for the uses for which said building is designed and intended, and title thereto shall be fully vested in the party of the first part absolutely free and clear of any claim, lien, mortgage or encumbrance whatsoever, except the lien of this indenture; and the party of the first part does hereby undertake and covenant to maintain and keep said furniture, furnishings and fixtures in good condition and repair, and to renew or replace same from time to time as may be reasonably necessary and sufficient to keep said furniture, furnishings and fixtures at all times during the life of this indenture reasonably appropriate in quality and sufficient in quantity for their respective use in said club building, and the title to all such additions to or replacements of such furniture, furnishings and fixtures of said club building made during the life of this indenture shall be vested in the party of the first part and shall at once become and be at all times thereafter subject to the lien hereof, but otherwise absolutely free and clear of any claim, lien, mortgage or encumbrance whatsoever."
Exceptant relies upon and urges in support of its contentions against the confirmation of said report and findings, that familiar and well established line of cases, amongst which are:Pennock v. Coe, 64 U.S. 117; York Manufacturing Co. v.Cassell, 201 U.S. 344; Harris v. Youngstown Bridge Co.,90 Fed. Rep. 322; Holt v. Henley, 232 U.S. 637; United StatesFidelity and Guaranty Co. v. G.W. Parsons Co.,235 Fed. Rep. 114; Pratt v. Scandinavian-American Bank, c., 103 Wn. 134;174 Pac. Rep. 462; Hodes v. Mooney, 8 N.J. Mis. R. 851;152 Atl. Rep. 205; Bank of America National Assn. v. La Reine HotelCorp., 108 N.J. Eq. 567; Manufacturers Building and Loan Assn. ofNewark v. Public Service Electric and Gas Co., 106 N.J. Eq. 68;Campbell v. Roddy, 44 N.J. Eq. 244; General Electric Co. v.Transit Equipment Co., 57 N.J. Eq. 460; Falaenau v. RelianceSteel Co., 74 N.J. Eq. 325.
From a reading of these cases, however, it will be observed that the underlying and motivating reason for the promulgation of the salutary and equitable principles therein laid down is to be found in the fact that a mortgagee who has not paid or parted with any consideration upon the strength of goods and chattels after their acquisition by his mortgagor cannot possibly be said or deemed to be an encumbrancer *Page 280 
for value, or possessed of equity, as against the conditional vendor thereof, who has failed to file his conditional sales contract within the time prescribed by statute. Consequently, neither these principles nor the cases wherein they are enunciated are applicable to the case now under consideration.
Nor can it be gainsaid, and a cursory reading of those cases will unquestionably demonstrate, that not even a single one of them involved or dealt, as does the case at bar, with the rights of a conditional vendor on the one hand, and those of a chattel mortgagee on the other; where the former had failed to file his conditional sales contract as prescribed by section 5 of our Uniform Conditional Sales act, and where the latter, although his mortgage had been recorded before, had nevertheless paid or advanced all or part of the mortgage consideration only after
the possession of the goods and chattels, upon the strength of which such payment or advance was made, had been acquired by his mortgagor; and all this, without notice or knowledge to him of the existence, and before the actual filing, of the conditional sales contract.
Moreover, by the very limitations specifically engrafted upon the general principles as expounded in the aforementioned cases relied upon by exceptant, the case, as here presented, is clearly placed beyond, rather than brought within, their scope. The court in each of those cases clearly indicates that the mortgagee had parted with nothing upon the strength of the property subsequently acquired by his mortgagor on a conditional sales contract; the contrary of which, however, is the fact in the casesub judice.
The general rule and the limitation thereof governing the rights of a mortgagee with respect to after-acquired property, as expounded in the very cases relied upon by exceptant, clearly demonstrates that it is applicable to those cases only wherein the mortgagee is neither an encumbrancer for value nor possessed of equity as against the conditional vendor.
But such are not the facts in nor presented by the case here under consideration. Here the evidence was, and the master from it could, and did, find "that the money advanced by complainants on their mortgage was advanced in installments *Page 281 
over a period extending from January 7th, 1928, until August 2d 1928; that it was the intention of the complainants and of defendant, Cosmopolitan Club (the mortgagor), that every dollar so advanced was to be secured by the Cosmopolitan Club's real estate, club house and the furniture and furnishings to be placed in the club house, all of which were expressly mentioned in the complainants' mortgage; that said mortgage contained a covenant on the part of the defendant, Cosmopolitan Club, to equip the club house with furniture and furnishings free of other liens; that complainants made the last advance to the defendant, Cosmopolitan Club, on August 2d 1928, amounting to $34,997.82, after the furniture and furnishings had been placed in the club house; that complainants did advance their money on their mortgage relying on the real estate, the club house and the furniture and furnishings placed in it; that complainants had no notice or knowledge of the conditional sales contract of the defendant L. Barth Company; that said conditional sales contract was not recorded within ten days after the making thereof and not until after the complainants had advanced the full amount secured by their mortgage; that complainants were purchasers for value of the furniture and furnishings described in the conditional sales contract of the defendant L. Barth 
Company, and entitled to priority in payment out of the proceeds of the furniture and furnishings mentioned in said conditional sales contract."
From the foregoing findings of fact by the master, all of which are abundantly supported by the evidence, it unquestionably appears that complainants, without notice or knowledge of exceptant's conditional sales contract which had not been filed within the prescribed statutory period and before its actual filing, actually advanced and paid out to the mortgagor the sum of $34,997.82; only, however, upon the strength, and after the delivery and installation, of the furniture and furnishings in the said mortgagor's club house. But it is contended on behalf of exceptant that, notwithstanding the foregoing, since complainants recorded their mortgage before the conditional sales contract came into existence, they *Page 282 
are neither "subsequent purchasers" within, or entitled to claim any of the benefits of, section 5 of our Uniform Conditional Sales act; because said act, as exceptant argues, was enacted for the benefit of and is applicable to "subsequent purchasers" only.
I am, however, unable to agree with this contention in its entirety. On the contrary, I am fully satisfied, for the reasons hereinafter given, that complainants, to the extent of the $34,977.82 advanced at the time and under the peculiar circumstances found by the master, all of which have already been hereinbefore detailed, are possessed of equity, and are good-faith encumbrancers for value, as against the conditional vendor, and, therefore, as such and to said extent, are subsequent "purchasers," within the purview of and as defined by section 1 of the act in question.
Upon well settled principles, which require no citation of authority, in construing a statute the words or terms therein found are to be the servants, and not the masters, of a perspicuous legislative intent, and as such are to be interpreted so as to subserve, rather than subvert, that intent. From a consideration of the mischief which it was designed to remedy and correct, it at once becomes apparent that protection, as against secret outstanding conditional sales contracts, to those mortgagees, amongst others therein specified, who, innocently and in good faith, have paid consideration upon the strength or security of goods and chattels, was the paramount purpose and constituted the animating legislative motive in the enactment of our present Uniform Conditional Sales act.
Thus it may be seen that the act in question was designed and intended to afford protection to those mortgagees only who in good faith had paid consideration for their mortgage. Consequently, the conclusion is inescapable that it was neither designed nor intended to afford protection to a mortgagee, who, having paid no consideration for his mortgage, had merely obtained and recorded it after the creation, but before the atual filing, of the conditional sales contract.
And, it is equally apparent that this act was neither designed *Page 283 
nor intended for the purpose of depriving a mortgagee — who had paid a bona fide consideration to his mortgagor, and this only after the latter had acquired possession of the goods and chattels upon the strength of which the former had paid said consideration without any notice or knowledge of an outstanding and unfiled conditional sales contract — of its protective provisions, merely because he had recorded his mortgage before, instead of waiting until after, the conditional sales contract came into existence. It must be conceded that if a mortgagee, so circumstanced, had obtained and recorded his mortgage after, instead of before, he had paid the consideration therefor, he unquestionably would be deemed to be a "purchaser" within the meaning of the act in question.
Nor does this act contemplate or provide that such a mortgagee should be deprived of the status of a "purchaser" merely because he saw fit to take and record his mortgage before, instead of waiting until after, he had paid the consideration therefor. No valid or equitable reason has been advanced, nor do I know of any such to exist, why any such construction, even if such were permissible, should be placed upon the act; especially where, as here, it is neither shown nor claimed that the conditional vendor changed his position or jeopardized his rights as a result of the action of the mortgagee in so recording his mortgage.
In view of the foregoing, I am not of the opinion and, therefore, am unwilling to hold, that the mere time of the recording of one's mortgage, without regard or reference to the time of the advancement or payment of the consideration thereunder or therefor, governs and controls in the determination of whether such mortgagee is or is not a subsequent purchaser within the intent and meaning of the act in question. On the contrary, I am rather inclined to the view that where, as here, the mortgage consideration is to be advanced, from time to time, as and when the building progresses and the furniture and furnishings are installed, and, accordingly, is advanced upon the strength thereof, the time of the making of such advances under, and not the time of *Page 284 
the recording of, the mortgage — with respect to the time of the delivery of the goods and chattels — is the controlling test as to whether such mortgagee is, to the extent of the advances thus made, a subsequent purchaser within the purview of the act.
The case of McCloskey v. Henderson, 231 N.Y. 130;131 N.E. Rep. 865, is quite analogous to the one at bar. There the mortgages, which contemplated the making of advances, from time to time, as the building operations progressed, were recorded on May 1st, 1914. After the execution and recording of these mortgages, and subsequent to May 15th, 1914, building materials, which the mortgagor had purchased on a conditional sales contract, were delivered upon the mortgaged premises. Between the date of the delivery of these materials and the filing of the conditional sales contract, the mortgagee made various advances on its mortgages. Under these circumstances, the New York court of appeals held that the mortgagee, "as to its mortgages covering the installments which have been mentioned was plainly a bonafide encumbrancer under the statute."
For the reasons hereinbefore stated, the exceptions will be overruled and the master's report and findings, except to the extent that same have hereinbefore been modified, will be approved and confirmed. Decree accordingly. *Page 285